**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

|  |  |
|---|---|
| MAHLON OIE, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>   v.<br><br>HUSCH BLACKWELL LLP,<br><br>            Defendant. | Case No.: 2:24-cv-00672-LA |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

## I.      INTRODUCTION

Plaintiff Mahlon Oie ("Plaintiff") submits the instant unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class (the "Motion") in this action, *Mahlon Oie v. Husch Blackwell LLP*, Case No. 2:24-cv-00672-LA, (the "Action"). The Motion is unopposed by Defendant Husch Blackwell, LLP ("Defendant"). The terms of the proposed Settlement are set forth in the attached Settlement Agreement ("Agr." or "Agreement")[1] attached as **Exhibit A** to the Declaration of Abbas Kazerounian ("Kazerounian Decl.").

This consumer class action arises form Plaintiff's allegations that Defendant unlawfully attempted to collect alleged debts due from Plaintiff and other similarly situated consumers in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"). Plaintiff's First Amended Complaint (ECF No. 25) (the "FAC") alleges, that Defendant, a

---

[1] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Settlement Agreement.

company located in Milwaukee, Wisconsin which regularly engages in debt collection violated sections 1692e, 1692f and 1692g of the FDCPA by sending Plaintiff and similarly situated Class members false or misleading collection communications which represented that they had less than thirty (30) days to dispute the alleged debt or to request validation of the alleged debt from Defendant. Defendant denies the alleged wrongdoing and has asserted defenses to Plaintiff's FAC.

After extensive investigation and evaluation of the facts and law concerning the claims asserted in the Action and good faith and arm's length settlement negotiations, the parties arrived at a settlement and compromise of disputed claims. The Agreement provides meaningful relief to the Class Members. *See* Agr. § 5.1. Specifically, under the Agreement, Defendant has agreed to provide a Settlement Fund of $9,090.00 which will provide Settlement Awards in the sum of $30.00 to each of the Class Members. *Id*. In addition to and separate from the Settlement Fund, subject to the Court's approval, Defendant has agreed to pay Plaintiff an Incentive Award of $2,500.00 for Plaintiff's time and effort in this Action as a Class Representative, reasonable attorneys' fees and costs to Class Counsel (*see Id*. at §§ 6.1-6.2), and the costs and expenses of the Settlement Administrator for Class Notice and settlement administration (*see Id*. at § 5.3). In exchange for these settlement benefits, Plaintiff and all Class Members who do not timely exclude themselves from the Settlement will release and discharge Defendant and other Related Parties from the Released Claims (*Id.* at § 16.1).

While Plaintiff is confident of a favorable determination on the merits, Plaintiff believes it is desirable to compromise, settle, and forever bar the Action to eliminate the further risk and expense of litigation, including the filing of a motion for class certification, Plaintiff agrees that the Settlement provides substantial settlement benefits to the Settlement Class Members. Agr. § 5.1. Defendant denies liability but has also determined it is desirable to settle this Action to avoid

further expense, inconvenience, and inherent risk of continued litigation. *Id.* at § 1.

Accordingly, Plaintiff moves for an order: (1) certifying the Class for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(3); (2) preliminarily approving the proposed Settlement; (3) appointing Plaintiff, Mahlon Oie, as Class Representative; (4) appointing Abbas Kazerounian, Mona Amini, and Gustavo Ponce, of Kazerouni Law Group, APC, and Matthew McKenna of Shield Law, LLC, as Class Counsel; (5) appointing Simpluris, Inc. as the Settlement Administrator; (6) approving and directing dissemination of the Class Notice to Settlement Class Members; and (7) scheduling a Final Approval Hearing.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Sometime prior to February 1, 2024, Plaintiff allegedly incurred financial obligations to an original creditor, The Sunset Homes Association, Inc. ("Sunset"). FAC ¶ 22. These financial obligations were primarily for personal, family or household purposes, which was a "debt" as that term is defined by 15 U.S.C. § 1692a(5) (the "Debt"). *Id.* at ¶ 23. Sometime after incurring this Debt, Plaintiff allegedly defaulted on the alleged Debt and sometime thereafter, Defendant was assigned or transferred the Debt and proceeded to engage in collection activities in attempts to collect the alleged Debt from Plaintiff. *Id.* at ¶ 24-25. Defendant is a "debt collector" as that term is defined by the FDCPA. Defendant attempted to collect a debt from Plaintiff during their first communication but falsely represented that Plaintiff had only ten (10) days to dispute the alleged debt or have it validated by Defendant. *Id.* at ¶¶ 26-32.

Specifically, Defendant sent Plaintiff an initial communication on February 1, 2024, attempting to collect the Debt (the "Collection Letter"). *Id.* at ¶¶ 26-27. This February 1, 2024, letter indicated the following under the heading "**How can you dispute the debt?**":

- Federal law gives you 30 days after you receive this notice to dispute the validity of the debt or any part of it. The law does not require our

firm to wait until the end of the thirty-day period before suing your unit to collect this debt.

- **Call or write to us by February 11, 2024, to dispute all or part of the debt.** If you do not, we will assume that our information is correct.

- **If you write to us by February 11, 2024,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents. We accept disputes electronically at billie.fatheree@huschblackwell.com

In addition, the Collection Letter from Defendant included the following under the heading

**"What else can you do?":**

- **Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by **February 11, 2024**, we must stop collection until we send you that information. You may use the form below or write to us without the firm. We accept such requests electronically at billie.fatheree@huschblackwell.com

- **Go to www.cfpb.gov/debt-collectiom to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.

- **Contact us about your payment options.**

The Collection Letter was Defendant's first written correspondence with Plaintiff. *Id.* at ¶ 27. Defendant's Collection Letter provided Plaintiff less than 30 days to dispute or validate the alleged debt, as Defendant's Collection Letter was dated February 1, 2024, and only allowed Plaintiff until February 11, 2024, to either dispute the alleged debt or request validation.

The parties have come to a settlement and have since negotiated the details of the Settlement Agreement and now submit the Settlement for the Court's consideration with the instant Motion for Preliminary Approval.

//

//

4

## III. THE SETTLEMENT

### A. THE SETTLEMENT CLASS

The Class includes all individuals who were sent an initial written communication by Defendant in an attempt to recover sums due between May 30, 2023, and May 30, 2024. Agr. § 2.4. The Class consists of approximately 303 persons. Agr. §§ 2.4, 5.1. Excluded from the Class are the Judge to whom the Action is assigned, any member of the Court's staff and immediate family, and all persons who are have timely submitted an Opt-Out Request. *Id* at § 2.4.

### B. CLASS NOTICE TO SETTLEMENT CLASS MEMBERS

When "a class is certified under Rule 23(b)(3) for purposes of settlement, the Federal Rules require that the district court 'direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Id.* citing Fed. R. Civ. P. 23(c)(2)(B). Here, Class Notice will be given to the members of the Class by direct U.S. mail and email for Class Members which Defendant has a mailing and email address for in substantially the same form as **Exhibit 2** which is attached to the Settlement Agreement. *See* Agr. § 9.2.

Each form of notice shall provide a claim ID, a summary of the important details regarding the Action and the Settlement, including deadlines and instructions on how to opt out or object, and contact information for Class Counsel. *See* Exhibit 2. The proposed Settlement Administrator is Simpluris, Inc. (*see Id.* at § 2.29), which is an independent, third-party national full-service class action notice and claims administrator that has been administering class action settlements for over fifteen years. *See* Declaration of Bri Nelson of Simpluris, Inc. ("Simpluris Decl.") ¶¶ 2-3. Within thirty (30) days after execution of the Settlement Agreement, Defendant will provide the Settlement Administrator with the Class List containing names and mailing and/or email addresses

for persons in the Class for whom Defendant has such information. Agr. at § 9.1.

Within fourteen (14) calendar days after the entry of the Preliminary Approval Order, or earlier, if possible, The Settlement Administrator shall provide direct Class Notice to the most recent mailing address from the list of Class Members, informing them of the Settlement and their entitlement to the Settlement Payment and the Opt-Out and Objection Deadlines. Specifically, the Settlement Administrator will provide Class Notice to Class Members initially via U.S. Mail ("Mail Notice") in substantially the same form as **<u>Exhibit 2</u>** to identifiable Class Members for whom Defendant has a mailing address. Agr. §§ 2.20, 9.2. In the event any Mail Notices are returned as undeliverable or are otherwise unsuccessfully delivered to a class member, a summary Notice will be sent via email in substantially the same form as that attached as **<u>Exhibit 2</u>** to the Settlement Agreement. *See* Exhibit 2, Agr. § 9.2. Email addresses will be obtained from Defendant to the extent that Defendant is in possession of such information. *Id*. Otherwise, email addresses shall be obtained by the Settlement Administrator through commercially or publicly available "reverse lookup" sources. *Id*. If the Settlement Administrator is unable to find a valid email address, the Settlement Administrator will check a national database for a better email and/or mailing address. *Id*.

The proposed Class Notice plan constitutes the best notice practicable and satisfies due process for this Settlement. *See Veness v. Heywood, Cari & Anderson, S.C.*, No. 17-cv-338-bbc, 2017 U.S. Dist. LEXIS 219702, at *13 (W.D. Wis. Dec. 29, 2017) (approving a class action settlement where notice was given via first class mail); *Cooper v. Investinet,* Civil Action No. 1:21-cv-01562-TWP-DML, 2017 U.S. Dist. LEXIS 235831 (S.D. Ind. Dec. 6, 2021) (approving a class action settlement where notice was provided by mail, and a second notice re-mailed if returned undeliverable); see also *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("Under the circumstances of this case, when all class members are known in advance, the Court finds that the

method of direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable—was the best practicable notice."); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) ("Individual notice, by mail, to all reasonably known class members is sufficient in the usual case."). Thus, the proposed Class Notice to the Class is reasonable and appropriate and should be approved by the Court.

### C. SETTLEMENT RELIEF

Defendant has agreed to pay the members of the Class who do not validly exclude themselves from the Settlement the sum of $30.00 each (*i.e.,* the "Settlement Award"). *Id*. at § 5.1, 10.1. The total amount to be paid by Defendant is $9,090.00 (i.e. the "Settlement Fund"). *Id* at § 2.31. Defendant has agreed to have the Settlement Fund, the Settlement Administrator's costs[2], the Incentive Award, and the Attorneys' Fees and Costs approved by the Court, deposited with the Settlement Administrator with thirty (30) days of the Effective Date.[3] Within fourteen (14) calendar days after the entry of the Preliminary Approval order, or earlier if possible, the Settlement Administrator will provide individual notice to the most recent mailing address for the list of the members of the Class (provided by Defendant). In the event that any Mail Notices are returned as undeliverable, a summary Notice will be sent via email. *Id*. at § 9.2. At least ten (10) days prior to the filing of the Final Approval Motion, the Settlement Administrator shall provide Plaintiff's counsel a declaration of compliance with CAFA. *Id*. at § 9.3. Within fourteen (14) days after the Opt-Out Deadline, the Settlement Administrator will notify both Class Counsel and

---

[2] Simpluris anticipates class notice and settlement administration expenses of approximately $10,929.00. Simpluris Decl. ¶ 20.

[3] The "Effective Date" means the fifth (5th) business day after the last of the following dates: (a) the Parties and their Counsel have executed the Agreement; (b) the Court has entered the Final Approval Order; and (c) the applicable time for filing an appeal has expired or, if appeals are filed, the date on which the Final Approval Order has been affirmed by the appellate court to which such appeals have been taken and such affirmances are no longer subject to further appeal or review. *Id*. at § 2.14.

Defendant in writing the amount necessary to fund payments to the Class Members that have not requested exclusion from the Class. *Id.* at § 11.1. Within forty-five days of the Effective Date, the Settlement Administrator will send by first class mail a check to each eligible Class Member (Class Members who have not submitted a valid and timely Opt-Out Request).[4] *Id.*

### 1. Remaining Funds

Any money remaining in the Settlement Fund that has not been distributed following the expiration of the Settlement Award checks, or any money in the Settlement Fund that has not otherwise been distributed per the Settlement Agreement shall be paid to a *cy pres* recipient. Agr. § 11.2. With the approval of the Court, the parties have agreed for the *cy pres* recipient to be National Consumer Law Center. *Id.* No money remaining in the Settlement Fund shall revert to or otherwise be paid to Defendant. *Id.*

### D. OPPORTUNITY TO REQUEST EXCLUSION FROM THE SETTLEMENT

Any member of the Settlement Class may request exclusion from the Settlement Class by mailing a written request ("Opt-Out Request") to the Settlement Administrator and Class Counsel at the address designated in the Class Notice. Agr. § 12.1. the Opt-Out Requests shall be postmarked no later than the Opt-Out and Objection Deadline, which is 75 days after the date of the entry of the Preliminary Approval Order. *Id.* To be considered valid, Opt-Out Requests must: (i) be signed by the person in the Class who is requesting exclusion; (ii) include the full name, phone number, email, current address of the person in the Class requesting exclusion; (iii) claim identification number included in the Class Notice; and (iv) include the following statement: "I/we request to be excluded from the settlement in the Oie Husch Blackwell FDCPA class action." *Id.* Except for those Class Members who have properly and timely mailed an Opt-Out Request, all

---

[4] Settlement Award checks will be valid for one-hundred twenty (120) days from the date on the check. *Id.* at § 11.1.

Class Members will be bound by the Settlement Agreement and the Final Judgment to be entered. *Id*. The Settlement Administrator will retain a copy of all requests for exclusion and shall provide copies of any such requests to counsel for the Parties. *Id.*

### E.  OPPORTUNITY TO OBJECT TO THE SETTLEMENT

Settlement Class Members will have the opportunity to appear at the Final Approval hearing to object to the proposed Settlement and/or to the application of Class Counsel for an award of attorneys' fees and/or incentive awards. *Id.* at § 12.4. The deadline for objecting is at no later than 75 days after the date of the entry of the Preliminary Approval Order, unless otherwise ordered by the Court. *Id.* To object to the Settlement, a Settlement Class Member must file a written objection with the Clerk of Court and mail a copy of the objection to Class Counsel and Defendant's counsel. *Id.* To be valid, an objection must include: (A) the name and case number of the Action; (B) the Class Member's name, address, and telephone number; (C) all arguments, citations and evidence supporting the Objection; and (D) a statement of whether the objecting Class Member intends to appear at the hearing for final approval of the class action settlement, and whether the objecting Class Member intends to appear at the hearing with or without counsel. *Id* at § 12.6. If the objecting Class Member is represented by counsel, counsel's name, address, email address and telephone number shall be set forth in any Objection. *Id.* The objecting Class Members shall also indicate in the objection the name and case number of all cases in which the objecting Class Members have previously submitted any objections to the settlement of any class action cases, whether the objection was filed by the objecting Class Member on his or her own behalf or on behalf of someone else. *Id.*

A Class Member intending to make an appearance at the Final Approval Hearing, either in person or through an attorney hired at the Class Member's expense, must: (i) file a notice of

intention to appear with the Court no later than twenty (21) days prior to the Final Approval Hearing, or as the Court may otherwise direct; and (ii) serve a copy of such notice of intention to appear on all counsel for all Parties. *Id*. at § 12.8. The Settlement Administrator will provide to Class Counsel and Defendant's Counsel all copies of any objections mailed to the Claims Administrator. *Id* at § 12.6.

Any Class Member who fails to submit a timely Objection pursuant the Settlement Agreement (*Id*. at § 12.7), and as detailed in the Mail Notice shall have waived any right to object to the Settlement Agreement and shall not be permitted to object to the Settlement Agreement at the Final Approval Hearing and shall be foreclosed from seeking any review of this Settlement Agreement by appeal or other means. *Id*. at § 12.7.

If ten percent (10%) or more of the Class Members properly opt-out of the Settlement, Defendant may, at its sole discretion, terminate the Agreement within thirty (30) calendar days after the Settlement Administrator has provided the Parties with final information regarding the number and percentage of Class Members opting out the Settlement. *Id*. at § 12.10. If Defendant elects to do so, it shall provide written notice to Class Counsel and the Settlement Administrator. *Id*. Additionally, Defendant shall bear the full cost of administration of the Settlement to date, including, but not limited to, all costs associated with the dissemination of notice, processing of claims and establishment of a Settlement Fund. *Id*.

### F. REASONABLE SCOPE OF RELEASE

In exchange for the relief described above, Class Members (other than those who validly exclude themselves from the Settlement), will be deemed to have released and discharged Defendant, as well as their respective predecessors, successors, assigns, affiliates, subsidiaries, holding companies, divisions, insurers, officers, directors, shareholders, members, managers, employees,

officials, subcontractors, and trustees (in such capacities as they relate to the actions that gave rise to the claims asserted in the Action), as well as The Sunset Homes Association Inc. to the extent any such liability or allegations derive in whole or part from the claims made against Defendant in the Complaint in the Action (collectively, "Released Parties"), from any and all claims, actions, causes of actions, suits, counterclaims, cross-claims, third-party claims, contentions, allegations, assertions of wrongdoing, demands for any and all debts, obligations, liabilities, damages (whether actual, compensatory, treble, punitive, exemplary, statutory, or otherwise), attorneys' fees, costs, expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal, or statutory relief, any other benefits, or any penalties of any type whatsoever, whether know or unknown, suspected or unsuspected, contingent or noncontingent or discovered or undiscovered , that arise out of, relate to, or in connection with the debt collection letters that are the subject of this Action. Agr. § 16.1. Thus, the scope of the release is properly tailored.

### G. SETTLEMENT PURPOSES ONLY

The Settlement Agreement was made for the sole purpose of settlement of the Action on a class wide basis, including the settlement of all related individual claims made by Plaintiff. *Id*. at 3.1. The Settlement of this Action is expressly conditioned on the entry of a Preliminary Approval Order and a Final Approval order by this Court. In the event that the Final Approval Order does not become final for any reason, or in the event that the Effective Date, as defined herein, does not occur, the Settlement Agreement shall be deemed null and void ab initio and shall be of no force and effect whatsoever, and shall not be referred to or utilized for any purpose whatsoever. *Id*.

### H. TERMINATION OF AGREEMENT

Either side shall each have the right to unilaterally terminate the Settlement Agreement. *Id*. at § 17.1. If Plaintiff or Defendant choose to do so, he or it shall provide all other Parties with a

written notice ("Termination Notice") within ten (10) calendar day of any of the following occurrences: (a) the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Agreement; (b) an appellate court reverses the Final Approval Order, and the Agreement is not reinstated without material change by the Court on remand; or (c) the Effective Date does not occur. Id. If either Party chooses to terminate the Agreement, the Agreement shall be of no force and effect and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if this Agreement had never been executed, and any orders entered by the Court in connection with the Agreement shall be vacated. *Id*. at § 17.3.

## I.  ATTORNEY'S FEES AND COSTS, AND INCENTIVE AWARD FOR PLAINTIFF

Defendant has agreed to pay a sum not to exceed $90,000.00 for Class Counsel's attorneys' fees and costs, which will be provided to the Settlement Administrator to be distributed to Class Counsel with the Court's approval. Agr. § 6.1. No interest shall accrue on these amounts at any time. *Id*. Defendant has agreed not to oppose Class Counsel's motion or request for attorney's fees and costs so long as it does not exceed $90,000. *Id*. Class Counsel will file a motion or request for award of attorney's fees and costs at least thirty (30) days prior to the Court's Final Approval Hearing. *Id*.

The Agreement contemplates that Class Counsel will request an Incentive Award to be paid by Defendant to the named Plaintiff in an amount of $2,500 for the time and effort Plaintiff has personally invested in this Action as the Class Representative. Agr. § 6.2. Such an Incentive Award recognizes Plaintiff's service to the Class as "an essential ingredient of any class action[.]" *Cook v. Niedart*, 142 F.3d 1004, 1016 (7th Cir. 1998) (citations omitted) (affirming $25,000 incentive award to plaintiff); *see also* 4 William B. Rubenstein et al., Newberg on Class Actions §

11:38 (4th ed.2008) ("Incentive awards are fairly typical in class action cases."). In addition, the proposed Incentive Award is reasonable and appropriate given the actions Plaintiff has taken to protect the interests of the class, the degree to which the Class has benefitted from those actions (*i.e.,* the Settlement), and the time Plaintiff has expended assisting with the prosecution of this case since its inception (*see* Declaration of Mahlon Oie ("Oie Decl.") at ¶¶ 8-9, 11). Further, the proposed Incentive Award is within the range of incentive awards approved by other courts. *See, e.g., Pierre v. Midland Credit Mgmt.,* No. 16 C 2895, 2019 U.S. Dist. LEXIS 2357296 (N.D. Ill. Dec. 11, 2019) (granting an incentive award of $4,000 in an FDCPA class action settlement); *Schoemaker v. Bass & Moglowsky, S.C.,* No. 3:19-cv-00316-wmc (W.D. Wis., Jan. 3, 2020) (approving an incentive award of $1,000 in a FDCPA class action settlement).

## IV.     LEGAL STANDARD FOR CLASS CERTIFICATION

Rule 23(e)(1) lays out certain procedures that must be followed prior to final approval of a settlement. As an initial matter, the parties must provide the court with information sufficient to enable the court to determine whether to give notice of the proposed settlement to the class. Fed. R. Civ. P. 23(e)(1)(A). In 2018, Rule 23(e) was amended to "provide guidance to federal courts considering whether to grant preliminary approval of a class action settlement." *Nistra v. Reliance Tr. Co.,* No. 1:16-CV-04773, 2020 U.S. Dist. LEXIS 268983, 2020 WL 13645290, at *1 (N.D. Ill. Mar. 12, 2020). In "deciding whether to send notice" the Court must determine whether "it likely will be able both to approve the settlement proposal under Rule 23(e)(2) and, if it has not previously certified a class, to certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e), Committee Notes.

First, the district court must determine whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). In the settlement

context, where "a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class," Rule 23 "protect[s] absentees by blocking unwarranted or overbroad class definitions" and "demand[s] undiluted, even heightened, attention . . . ." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

Second, the district court must find that the settlement proposal is "within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). A court may finally approve a proposed settlement "only after a hearing and only on a finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). At the preliminary approval stage, however, the court need only "ascertain whether there is any reason to notify the class members of the proposed settlement [before] proceed[ing] with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). In determining whether a proposed class action settlement falls within the range of possible approval, "courts in this district have tended to perform a more summary version of the final fairness inquiry . . . ." *In re TikTok*, 565 F. Supp. 3d at 1087 (internal quotation and citation omitted).

Third, upon finding that class certification is likely and that the proposed settlement is within the range of possible approval, the district court directs the parties to issue notice "in a reasonable manner to all class members who would be bound" by the settlement. Fed. R. Civ. P. 23(e)(1); *Edwards v. Educ. Mgmt. Corp.*, No. 1:18-cv-03170-RLY-DLP, 2022 U.S. Dist. LEXIS 150784, 2022 WL 3213277, at *2 (S.D. Ind. June 13, 2022).

## A. CERTIFICATION THE PROPOSED SETTLEMENT CLASS FOR THE PURPOSES OF IMPLEMENTING THE SETTLEMENT IS APPROPRIATE

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions in federal court. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). Rule 23(a) ensures that the named plaintiffs  are appropriate representatives of the

class whose claims they wish to litigate. *Id.* at 349. Rule 23(a)'s four requirements – numerosity, commonality, typicality, and adequacy – effectively limit the class claims to those fairly encompassed by the named plaintiff's claims. *Id.* If all these prerequisites are met, a court must also find that at least one of the subsections of Rule 23(b) is satisfied. "When certification is sought under Rule 23(b)(3) . . . proponents of the class must also show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). This Settlement meets the requirements of Rule 23(a) and Rule 23(b)(3) for settlement purposes.

      **1.   Rule 23(a) Requirements**

          **a.   The Class is sufficiently numerous such that joinder is impracticable**

The first requirement under Rule 23(a) is that the purported class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To be impracticable, joinder need not be impossible, but instead must be shown to be inconvenient and difficult. *Copeland v. Wabash Cnty., Indiana,* 338 F.R.D. 595, 601 (N.D. Ind. 2021). When determining whether joinder of all class members is impracticable, the court may consider many factors, including: the class size; judicial economy arising from the avoidance of a multiplicity of actions; the ease of identification of members of the proposed class; the geographic dispersion of class members; the inconvenience of trying individual suits; the nature of the action; the size of each plaintiff's claim; the financial resources of the class members; requests for prospective injunctive relief which would involve future class members; and any other factors relevant to the practicability of joining all the class members. *Olson v. Brown*, 284 F.R.D. 398, 407 (N.D. Ind. 2012). "While there is no magic number that applies to

every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017). Here, numerosity is satisfied. Based upon Defendant's own records, the Parties agree that there are 303 Settlement Class Members. Kazerounian Decl. ¶ 18; Agr. § 5.1. Litigating 303 separate claims would be economically and judicially impracticable because the claims are similar (if not identical) and the recovery minimal. Thus, the potential members of the Class are sufficiently numerous that joinder of all the members of the Class is impracticable.

### b.  Plaintiff's claims present questions of law and fact common to the Class

The second requirement under Rule 23(a) is the need to have "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Concerning the commonality requirement, claims of individual class members may arise from a 'common nucleus of operative fact,' which is usually satisfied where the defendant engaged in standardized conduct towards members of the proposed class." *Olson*, 284 F.R.D. at 410 (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)). And "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

The commonality requirement is satisfied because the putative class members' claims arise from the same conduct or practice of the Defendant. There are several questions of law and fact common to Plaintiff and to the Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to, the

following: (1) whether Defendant's claim of bona fide error provides a defense to Defendant's standard practice of sending initial communications to consumers that mislead or falsely represent that the recipient has only ten (10) days to dispute the alleged debt or have it validated by Defendant; (2) whether Plaintiff and the Class can recover statutory damages under the FDCPA as a result of Defendant's wrongdoing; and (3) whether the initial communication Defendant sent to 303 members of the Class violates sections 1692e, 1692f and 1692g of the FDCPA under the "least sophisticated" debtor standard because Defendant. Here, each Class Member has the same claim under the FDCPA resulting from receipt of the same debt collection letter from Defendant, and the same statutory damages under the FDCPA. Where the elements of each cause of action will be common to all of the persons affected given Defendant's standardized conduct towards the members of the proposed Class, the commonality requirement is satisfied. *See Chapman v. Bowman*, No. 2:15-CV-120 JD, 2015 U.S. Dist. LEXIS 172338, at *8 (N.D. Ind. Dec. 29, 2015). *See, e.g., Lucas v. GC Servs. L.P.*, 226 F.R.D. 337, 340 (N.D. Ind. 2005) ("Courts consistently have found a common nucleus of operative facts if a defendant has allegedly directed standardized conduct toward the putative class members or if the class claims arise out of standardized documents."); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004) ("Similarly, a plaintiff satisfies the commonality requirement when all class members received the same collection letter"); *Mann v. Acclaim Fin. Servs.*, 232 F.R.D. 278, 284 (S.D. Ohio 2003) ("In FDCPA cases, where plaintiffs have received similar debt collection letters . . . courts have found common questions of law or fact sufficient to certify the class."). Therefore, commonality is established.

### c.  Plaintiff's claims are typical of the claims of the members of the Class

The third requirement under Rule 23(a) is the need to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

Typicality is closely related to the proceeding question of commonality. *Copeland*, 338 F.R.D. at 604. The typicality requirement "is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Howard v. Cook Cty. Sheriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021) (internal quotations and citation omitted). A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008). Some factual variations may not defeat typicality, rather, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large. *Id.*

In this case, Plaintiff's claims are typical of the claims of the Settlement Class Members, as they arise from a nearly identical factual basis because Defendant's standardized conduct gave rise to the FDCPA claims. Plaintiff, like the members of the proposed Class, received an initial communication from Defendant in an attempt to recover sums due between May 30, 2023, and May 30, 2024 which allegedly violated sections 1692e, 1692f and 1692g of the FDCPA by misleading or falsely representing that Plaintiff had only ten (10) days to dispute the alleged debt or have it validated by Defendant. FAC, ¶¶ 26-33. The only differences between the initial communication Defendant sent to Plaintiff and to the Class members is the date of the communication, and the debtor's name, address, email address, and account number.

Therefore, Plaintiff is advancing the same claims and legal theories on behalf of himself and the Settlement Class. Defendant has no defenses unique to Plaintiff. Plaintiff's claims are thereby representative of, and reasonably co-extensive with, the claims of the Settlement Class during the Settlement Class Period. Thus, typicality is met. *See Lucas v. GC Servs. L.P.*, 226 F.R.D. 337, 341 (N.D. Ind. 2005) ("All of the class members' claims arise from the same practice . . . which gave

rise to Plaintiffs' claims, that is each time Defendant sent a collection letter similar to that received by Plaintiffs, they allegedly violated the Fair Debt Collection Practices Act. Thus, Plaintiffs' claims are typical of the class because they arise from the same course of conduct and are based on the same general legal theory."); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 698 (S.D. Fla. 2004) ("Parties seeking class certification have satisfied the typicality requirement by showing that all prospective class members received a variation of the same collection letter.").

### d. <u>Plaintiff and Class Counsel will Fairly and Adequately Protect the Interests of the Class</u>

The fourth and final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation includes two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest" of the class members. *Retired Chicago Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Also, counsel for the named plaintiffs must be experienced and qualified and generally be able to conduct the litigation. *See Eggleston v. Chi. Journeymen Plumbers' Loc. Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981).

Here, Plaintiff is a member of the Settlement Class, and does not have any conflicts of interest with other Settlement Class Members. Kazerounian Decl., ¶ 7. Plaintiff has no known conflicts of interest with her counsel. Oie Decl., ¶ 5. Counsel representing Plaintiff are competent and experienced in litigating consumer class actions, including class actions for violations of the FDCPA. *See* Kazerounian Decl., ¶¶ 31-67. Plaintiff and his counsel have also been vigorously litigating this matter since its inception. *Id*. ¶¶ 5, 8-20, 68. The parties also engaged in extensive good-faith, arm's-length negotiations. *Id*. ¶ 17. Therefore, Plaintiff and Class Counsel will adequately represent

the Settlement Class.

## 2. <u>Rule 23(b) Requirements</u>

In addition to meeting class certification requirements under Rule 23(a), the proposed class must satisfy the requirements of one of the three subsections of Rule 23(b). Plaintiff seeks to satisfy Rule 23(b)(3). The United States Supreme Court has explained that the "predominance" and "superiority" requirements of Rule 23(b)(3) limit class certification to cases in which "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) (citation omitted). "Predominance" tests the "legal or factual questions that qualify each class member's case as a genuine controversy" and is similar to Rule 23(a)(3)'s requirement of typicality. *Id.* at 623. Relative to superiority, in assessing whether the requirement has been met, courts should consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

### a. Common Questions Sufficiently Predominate

Here, the predominant question common to all class members is whether the initial communications sent by Defendant violate the FDCPA by misleading or falsely representing to Plaintiff and the class members that they had less than 30 days to dispute the alleged debt or have it validated by Defendant. Resolution of each Settlement Class Member's claim will hinge on the same operative facts relative to the same collection letter from Defendant. The significant and

common issue of whether the initial communications were a misleading or false representation outweighs any individualized damages issues, and the proposed Class is cohesive enough to warrant adjudication by representation. *See Messner*, 669 F.3d at 815 ("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)."). Therefore, the Court should certify the Class for settlement purposes because common questions predominate. *See, e.g., Jackson v. Nat'l Action Fin. Servs., Inc.,* 227 F.R.D. 284, 290 (N.D. Ill. 2005) (holding that "[a]s long as the letters that class members received are very similar . . . the legal issue of whether those letters violate the FDCPA is predominate"); *Day v. Check Brokerage Corp*., 240 F.R.D. 414, 419 (N.D. Ill. 2007) (certifying FDCPA class action and finding that predominance prong satisfied where similar debt collection letters were at issue).

### b. A Class Action is Superior to Individualized Actions

A class action is also superior to pursuing these claims individually. It is doubtful that many individual claims would be pursued in light of the expense of litigation and the statutory cap on damages under the FDCPA, which reduces the incentive to litigate individual claims. *Jackson v. Nat'l Action Fin. Servs., Inc.,* 227 F.R.D. 284, 290 (N.D. Ill. 2005) ("The FDCPA affords recovery of up to $1,000 in statutory damages for individual plaintiffs; as such, the potential recovery here is not likely to provide sufficient incentive for members of the proposed class to bring their own claims."); *Foley v. Student Assistance Corp*., 336 F.R.D. 445, 451 (E.D. Wis. 2020) ("[L]ike many FDCPA cases, a class action is superior to individual litigation for reasons of judicial economy and the small-stakes nature of the claims at issue."). In addition, there is no indication that other litigation is already pending concerning the controversy, nor is there any indication that resolution of these claims in this Court is undesirable. Further, no facts indicate that there will be any difficulty managing this class action, especially in light of already identified class members and the pending settlement. The

personal notice and opt-out requirements of Rule 23(b)(3) will also protect the interests of those who will qualify as class members. Resolution of the dispute under the class action mechanism of redress for settlement purposes makes sense because it is superior to all other available means for the fair and efficient adjudication of this controversy involving persons who received an initial communication from Defendant which mislead or falsely represented their rights under sections 1692e, 1692f and 1692g of the FDCPA.

Here, the 303 other Settlement Class Members are likely unaware that the FDCPA requires that a debt collector include certain notices in their initial communication. *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998) ("Many plaintiffs may not know their rights are being violated, may not have a monetary incentive to individually litigate their rights, and may be unable to hire competent counsel to protect their rights. A class action is judicially efficient in lieu of clogging the courts with thousands of individual suits."). Accordingly, the class action vehicle is the best avenue to protect the least sophisticated debtors. Individualized litigation would also cause significant delay, expense, and an overwhelming waste of already limited judicial resources by the actions brought by hundreds of individual consumers. The damages suffered by individual Settlement Class Members may be relatively small compared to the burden and expense that would be entailed by individual litigation.

By contrast, the class action device presents fewer management difficulties for the Settlement Class and provides the benefits of single adjudication and comprehensive supervision by a single court, resolving the claims against Defendant, and providing vindication to the class members who were not aware of having claims against Defendant resulting from their failure to include the notices required by §§ g(b) and e(11) of the FDCPA. *See, e.g., Lucas,* 226 F.R.D. at 342 (finding a "a class action is superior to individual action in this case because litigation costs are high and the likely

recovery is limited"). Thus, the superior requirement for settlement purposes is satisfied.

### B. THE SETTLEMENT IS WITHIN THE RANGE OF REASONABLENESS

Preliminary approval requires only that the Court evaluate whether the proposed settlement "is within the range of possible approval." *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980). The Seventh Circuit has identified a number of factors used to assess whether a settlement proposal is fundamentally fair, adequate, and reasonable: (1) the strength of plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Here, the proposed Settlement satisfies the above requirements, and it is unlikely that many objections would arise.

#### 1. The Strength of Plaintiff's Case.

"The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong,* 773 F.3d at 864; see also *Synfuel*, 463 F.3d at 653 (quoting same).

After conducting investigations, discovery and extensive settlement negotiations, Plaintiff and proposed Class Counsel believe they have a strong case for violations of the FDCPA that would likely prevail at trial. Defendant naturally disputes such allegations and believes it has a good chance of prevailing at trial. While each side believes in its respective case, the Parties agree that this settlement will help them avoid the great expense, inconvenience, and inherent risk involved in prolonged litigation. *See* Agr. at § 1. Without a settlement at this juncture, however, Defendant would continue to vigorously contest liability and damages (*see Id.*). Defendant would also continue to challenge the

proprietary of class certification outside of the settlement context. As such, the outcome of the case is by no means certain absent a settlement.

### 2. The Likely Complexity, Length and Expense of Continued Litigation.

The Seventh Circuit has held that the likely complexity, length, and expense of continued litigation are relevant factors in determining whether a class action settlement is fair, reasonable, and adequate. *Synfuel*, 463 F.3d at 653. Given the Parties' legal and factual positions, and ongoing litigation for over a year, continued litigation would be protracted, unduly burdensome, and expensive. Defendant would undoubtedly continue to vigorously defend the Action. *See* Agr. § 3. If litigation were to continue, Plaintiff would file a motion for class certification, and should Plaintiff prevail, the parties would likely submit motions for summary judgment, which could then lead to appellate practice, and/or preparation for trial. The Settlement avoids the delay of relief, as well as the risks and expense posed to both sides inherent with further litigation. Moreover, any decision on the merits is likely to be appealed, resulting in further delays, uncertainties, and great expense. Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."). When litigation will be costly and lengthy, settlement is especially favored because "the present lawsuit will come to an end and class members will realize both immediate and future benefits as a result." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Thus, the Agreement avoids risks for both sides and is in the best interest of the Class and this factor weighs in favor of approval of the proposed Settlement.

### 3. The Benefits Conferred by the Settlement

The benefits conferred by the Settlement for Settlement Class Members are substantial and

clearly outweigh the potential benefits and risks of proceeding with the class action. They include a substantial monetary payment now rather than waiting until after trial. Courts have stated that the fact that a proposed settlement may only amount to a fraction of the potential recovery does not mean that the proposed settlement should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Here, each Settlement Class Member is entitled to a $30.00 Settlement Award. The maximum statutory damages under the FDCPA is up to $1,000 (depending on whether the violation is proven to be willful). *See* 15 U.S.C. § 1692k(a)(1)-(2)(A) (FDCPA). The Settlement Award here of $30.00 per Settlement Class Member is an excellent result for the Settlement Class Members, as: (1) the value offered is a compromise of the maximum statutory damages each Settlement Class Member could receive in this matter, which would otherwise be highly contested and require vigorous litigation efforts, and (2) the value offered is substantially better when compared to other similarly approved settlements, some of which only offer a recovery of a few dollars.[5]

### 4. Opposition to Proposed Settlement

Significant opposition to a proposed settlement by interested parties should signal to a court that the settlement should not be approved. *Synfuel Techs.*, 463 F.3d at 653. At this time, there is no known opposition to the proposed Settlement Agreement, as notice has not yet been issued to Class Members. Accordingly, this factor should not weigh for or against preliminary approval. *See Sheffler v. Activate Healthcare, LLC*, No. 1:23-cv-01206-SEB-TAB, 2024 U.S. Dist. LEXIS 156311, at *21 (S.D. Ind. Aug. 30, 2024); *see also Veness v. Heywood, Cari & Anderson, S.C.*, No. 17-cv-338-bbc,

---

[5] *See, e.g., Acosta v. Patenaude & Felix*, No. 19-cv-954-CAB-BGS, 2020 U.S. Dist. LEXIS 165852, at *13 (S.D. Cal. Sep. 10, 2020) (finally approving a $3 settlement payment to class members in a FDCPA case); *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 684 (N.D. Cal. 2016) (approving FDCPA settlement of $13,610 for a class of 901 members, resulting in recovery of $15.10 per claimant); *Salazar v. Midwest Servicing Grp., Inc.*, No. CV 17- 0137 PSG (KSX), 2018 U.S. Dist. LEXIS 172934, 2018 WL 4802139, at *4 (C.D. Cal. Oct. 2, 2018) (approving award of $20.00 per class member).

2017 U.S. Dist. LEXIS 219702, at *11 (W.D. Wis. Dec. 29, 2017) ("At this point, court consideration of opposition is premature because the members have not yet had the chance to voice it.").

### 5. **Opinion of Experienced Class Counsel**

The fourth factor the Court should consider when determining whether a class settlement satisfies Rule 23(e)(2) is the opinion of competent counsel. *Synfuel Techs.,* 463 F.3d at 653. District courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux*, 690 F.2d at 634. Here, Class Counsel are qualified and highly experienced in litigating complex consumer class actions. *See* Kazerounian Decl., ¶¶ 31-67. Given Class Counsel's extensive experience in litigating similar cases, they are well positioned to assess the risks of continued litigation and benefits obtained by the settlement. Class Counsel believes that this Settlement is in the best interest of Settlement Class Members given the risks and uncertainty of proceeding with expensive and protracted litigation. Kazerounian Decl., ¶¶ 16, 28-30.

### 6. **The Stage of the Proceedings and Amount of Discovery Completed**

The final factor the Court should consider when determining whether a class settlement satisfies Rule 23(e)(2) is the stage of the proceedings and the amount of discovery completed at the time of settlement. This factor is designed to allow the Court to determine "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 495-96 (N.D. Ill. 2015).

Here, the Parties had begun the exchange of discovery, with Plaintiff propounding Requests for Admissions, Requests for Production of Documents and Interrogatories on Defendant. After receiving Defendant's responses to Plaintiff's discovery requests, Plaintiff deemed them deficient and requested to meet and confer with Defendant to discuss amended its responses. Kazerounian Decl., ¶ 17. During this time, Plaintiff conducted research and drafted a formal meet and confer letter

to Defendant. Kazerounian Decl., ¶ 17. After the Parties met and conferred, Defendant served its amended responses. Kazerounian Decl., ¶ 17. Soon thereafter, the Parties began settlement negotiations. However, during these settlement negotiations information was exchanged between the parties informally and both parties conducted a fair amount of their own research prior to the commencement of the settlement negotiations. Thus, this factor should not weigh against approval of the Settlement. *See Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted."). Indeed, the "label of 'discovery' [either formal or informal] is not what matters*." In re AT&T Mobility Wireless Data Services Sales Tax Litig.*, 2011 U.S. Dist. LEXIS 61246, 2011 WL 2204584, at *29. Instead, "[t]he pertinent inquiry is what facts and information have been provided." *Id. See also In re Cap. One Tel. Consumer Prot. Act. Litig.*, 80 F. Supp. 3d 781, 792-93 (N.D. Ill. 2015) (holding that "the court is not convinced that extensive formal discovery, when measured against the cost that would be incurred, would place the parties in a proportionally better position than they are now to determine an appropriate settlement value of this litigation.").

### 7. **The Settlement Treats Class Members Equitably.**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the Settlement treats all Class Members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018). Here, each Settlement Class Member has the same claim under the FDCPA resulting from receipt of the same debt collection letter from Defendant, and the same statutory damages under

the FDCPA. The Settlement provides that each Class Member will receive an equal portion (the sum of $30.00) from the Settlement Fund. Further, the release affects each Class Member in the same way as each Class Member will release the same claims. As such, this factor supports preliminary approval. *See Hale v. State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) (approving a Settlement that entitled each class member to an equal, pro-rata share of the settlement fund.).

### C. THE PROPOSED CLASS NOTICE IS REASONABLE

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. The best practicable notice "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

Pursuant to the Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice must concisely and clearly state in plain: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

Here, Class Notice will be provided to the Settlement Class Members through direct Mail Notice to the most recent mailing address provided by Defendant for the members of the Class (Agr. § 9.2). As the debt collector that previously sent mail communications and/or letters to the Settlement

Class, Defendant has the names and mailing addresses for the Settlement Class Members. Defendant will reasonably cooperate in the notice and administration process by providing the Class List to the Settlement Administrator and Class Counsel, on a confidential basis, which shall provide the names and mailing addresses for the Class. *Id*. The Settlement Administrator will provide Notice to Settlement Class Members via U.S. Mail in substantially the same form as that attached as **Exhibit 2** to the most recent mailing address from the list of members of the Class. *Id*. In the event that any Mail Notices are returned as undeliverable or are otherwise unsuccessfully delivered to a Settlement Class Member, those returned with a forwarding address shall promptly be re-mailed by the Settlement Administrator to such forwarding address. *Id*. In addition, Class Notice will be sent via email for those Mail Notices which are returned as undeliverable or otherwise unable to be delivered. (Agr. § 9.2). The Class Notice meets the requirements of Rule 23(c)(2)(B) as they will include information for the members of the Class regarding the nature of the Action, the Class definition, information about the Settlement Award available for the Settlement Class Members, as well as the manner and deadline to submit an Opt-Out Request to exclude themselves from the Settlement, the manner and deadline to submit an Objection, as well as the binding effect of the Settlement on Class Members who do not exclude themselves from the Settlement. *See* **Exhibit 2**.

Therefore, under the circumstances, the notice plan fulfills the requirements of adequate notice for due process purposes and should be preliminarily approved.

### D. APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

The adequacy of representation requirement is satisfied here, as there are no known conflicts of interest, as noted above. Furthermore, Class Counsel representing Plaintiff are competent and experienced in litigating consumer class actions, including class actions for violations of the FDCPA. *See* Kazerounian Decl., ¶¶ 22-29. Therefore, Plaintiff and Class Counsel will adequately represent

the Settlement Class. Accordingly, Plaintiff respectfully requests that he be appointed as Class Representative and that Plaintiff's counsel, Abbas Kazerounian, Mona Amini, and Gustavo Ponce of Kazerouni Law Group, APC, and Matthew McKenna of Shield Law, LLC, be appointed as Class Counsel.

### E. APPOINTMENT OF SIMPLURIS INC. AS THE SETTLEMENT ADMINISTRATOR

The Parties agreed to propose that the Court appoint Simpluris Inc. to serve as the Settlement Administrator. *Id.* at § 2.29. Simpluris Inc. provides administrative services in class action litigation nationwide and has extensive experience in administering consumer protection and privacy settlements. *See* Simpluris Decl. ¶¶ 2-3.

### F. THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P. 23(e)(2). Plaintiff respectfully requests that the Court preliminarily approve the proposed Settlement and schedule a Final Approval hearing no earlier than thirty (30) days after the Opt-Out and Objection Deadlines.

## V. CONCLUSION

Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order: (1) certifying the Class for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(3); (2) preliminarily approving the proposed Settlement; (3) appointing Plaintiff, Mahlon Oie, as Class Representative; (4) appointing Abbas Kazerounian, Esq., Mona Amini, Esq. and Gustavo Ponce, Esq. of Kazerouni Law Group, APC, and Matthew McKenna of Shield Law, LLC, as Class Counsel; (5) appointing Simpluris, Inc. as the Settlement Administrator; (6) approving and directing dissemination of the Class Notice; and (7) scheduling a Final Approval Hearing.

Dated: August 13, 2025                    Respectfully submitted,


                                          By: /s/ Abbas Kazerounian
                                              Abbas Kazerounian, Esq.
                                              Mona Amini, Esq.
                                              Gustavo Ponce, Esq.
                                              KAZEROUNI LAW GROUP, APC
                                              245 Fischer Ave., Unit D1
                                              Costa Mesa, CA 92626
                                              Telephone: (800) 400-6808
                                              Facsimile: (800) 520-5523

                                              Matthew McKenna, Esq. (Bar No. 1136438)
                                              SHIELD LAW, LLC
                                              237 South St. Unit 110
                                              Waukesha, WI 53186
                                              Telephone: (262) 420-5953
                                              Facsimile: (508) 588-7303

                                              *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 4(b), I hereby certify that I am an employee of Kazerouni Law Group, APC, and that on this 13th day of August 2025, the foregoing **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS** to be served through the Court's CM/ECF system to those persons designated by the parties that have appeared in the matter.

Dated: August 13, 2025                    Respectfully submitted,


By: _/s/ Abbas Kazerounian_____
Abbas Kazerounian, Esq.
Mona Amini, Esq.
Gustavo Ponce, Esq.
KAZEROUNI LAW GROUP, APC
245 Fischer Ave., Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Matthew McKenna, Esq. (Bar No. 1136438)
SHIELD LAW, LLC
237 South St. Unit 110
Waukesha, WI 53186
Telephone: (262) 420-5953
Facsimile: (508) 588-7303

*Attorneys for Plaintiff*