## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MAHLON OIE, individually and on behalf of all others similarly situated,

                Plaintiff,

    v.

HUSCH BLACKWELL LLP,

                Defendant.

Case No.: 2:24-cv-00672-LA

## DECLARATION OF ABBAS KAZEROUNIAN IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

I, Abbas Kazerounian, hereby declare under penalty of perjury that the following is true and correct:

1.    I am one of the attorneys for Plaintiff Mahlon Oie ("Plaintiff" or "Class Representative") and the proposed Class members (the "Class" or "Class Members") in the above-captioned action (the "Action") and the proposed Settlement Agreement entered into with Defendant Husch Blackwell LLP ("Defendant").

2.    I am an attorney in good standing admitted to practice before this District Court, the United States District Court for the Eastern District of Wisconsin since July 2015. I was admitted to the State Bar of California in 2007, and have been a member in good standing ever since that time. I am a member in good standing of the State Bars of California, Texas, Illinois, Colorado, New York, Washington, Michigan, District of Columbia, the Eighth Circuit Court of Appeals the Ninth Circuit Court of Appeals, the Eleventh Circuit Court of Appeals, and the Supreme Court of the United States. I have litigated cases in both

state and federal courts in California, Washington, Nevada, Arizona, Arkansas, New York, New Jersey, Colorado, Tennessee, Ohio, Florida, Illinois, Nebraska, Virginia, Minnesota, and Texas.

3.     If called as a witness, I would competently testify to the matters herein from personal knowledge. The declaration is based upon my     personal knowledge, except where expressly noted otherwise.

4.     I submit this declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class.

5.     My firm has conducted pre-lawsuit investigations concerning the violations alleged in this Action and I, together with my colleagues, Mona Amini, and Gustavo Ponce at Kazerouni Law Group, APC, and Matthew McKenna of Shield Law, LLC (collectively "Class Counsel") have been involved in this case since its inception.

6.     I, together with my co-counsel, request to be preliminarily approved as Class Counsel for the proposed settlement class.

7.     I am unaware of any conflict of interest between Plaintiff and any settlement class member, or between Plaintiff and Class Counsel.

<u>**FACTUAL & PROCEDURAL BACKGROUND**</u>

8.     On May 30, 2024, Plaintiff filed this putative class action, and later filed the First Amended Complaint ("FAC") against Defendant asserting claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. ("FDCPA").

9.     Plaintiff alleged on behalf of himself and the putative class that Defendant sent him and the putative class members false or misleading collection communications stating they had less than thirty (30) days to dispute the alleged debt or request validation from Defendant.

2

10. Plaintiff filed the Class Action Complaint seeking damages, and any other available legal or equitable remedies, resulting from the alleged illegal actions of Defendant.

11. The Parties participated in discovery relevant to their respective alleged claims and purported defenses, as well as related to the class period, class size, and the collection communications at issue in this Action.

12. During the discovery process discovery, the Parties met and conferred in good faith to resolve the discovery issues.

13. The Parties have spent over a year since the inception of this contested matter with Plaintiff's involvement in reviewing the Complaint as well as reviewing pleadings and discovery.

14. Plaintiff propounded written discovery and met and conferred with Defendant upon the discovery issues that arose.

15. After commencing the litigation, the Parties discussed potential settlement at length, and agreed upon a class settlement. Through the course of discovery and settlement negotiations, Defendant agreed to establish a Settlement Fund in the amount of $9,090.00 in order to provide each Class Member the sum of $30.00.

16. As a result of the above process and the Parties' representations to each other, I believe that the Parties are fully apprised of the relative strengths and weaknesses of each other's claims and defenses and the potential risks to each party of pursuing further litigation in this matter. While Plaintiff is confident in receiving a favorable determination on the merits, Plaintiff and Plaintiff's counsel have determined that the proposed settlement provides significant benefits to the Settlement Class Members and is in the best interests of the Settlement Class.

17.     The Parties engaged in extensive settlement discussions and negotiations regarding this Action. The Settlement of this Action is the result of non-collusive, arms-length and informed negotiations.

18.     Based on the informal discovery and information exchanged between the parties and Defendant's representations, Class Counsel understands the Class size to be 303 persons.

19.     The parties have agreed to resolve this matter on a class-wide basis subject to approval by this Court as a result of the parties' investigation to date and taking into account the uncertainties, delays, and expenses of the litigation process, including the likelihood of extensive depositions and costly discovery should the matter not settle, as well as the investigation of the claims to date.

20.     A Settlement Agreement was fully executed by the Parties by June 3, 2025. A copy of the parties' executed Settlement Agreement is attached hereto as **Exhibit A.**

### THE SETTLEMENT

21.     This Settlement provides damages to Settlement Class members.

22.     Specifically, Defendant has agreed to pay a Settlement Award in the sum of $30.00 to each Settlement Class member conditioned upon Court approval. Class Members will receive this amount if they do not opt-out, which I believe to be an outstanding result.

23.     The Agreement provides that all costs of the Class Notice, as well as other services and expenses related to the administration and distribution of the Settlement, will be paid by Defendant separate and apart from the Settlement Fund. The Settlement Administrator the Parties are requesting the Court to approve is Simpluris Inc.[1]

---

[1] *See* Declaration of Bri Nelson of Simpluris Inc., submitted concurrently with Plaintiff's Motion.

4

24.     The Agreement provides that, subject to the Court's approval, Plaintiff's counsel will seek up to $90,000 in attorney's fees *and* expenses.  This amount is unopposed by Defendant and shall be paid separate and apart from the Settlement Fund.   Also, separate from the Settlement Fund, and subject to the Court's approval, Defendant shall pay Plaintiff Mahlon Oie an Incentive Award of $2,500.00 for the time and effort personally invested by Plaintiff in this Action as the named Plaintiff and proposed Class Representative.  The Court's approval of any Incentive Award for Plaintiff is not, and will not be, a condition of the Settlement and Defendant will not oppose or object to an Incentive Award that does not exceed $2,500.00.

25.     Class Members will give up the right to bring a lawsuit against Defendant with respect to any claims: (a) that could have been brought in the lawsuit; or (b) that arise out of or relate in any way to the administration of the Settlement.

26.     Class Notice will be provided directly through U.S. Mail or email to all class members. As the debt collector that previously sent previous communications and/or letters to the Class, Defendant has the names and mailing/e-mail addresses for the Settlement Class Members. Defendant has the names and mailing/e-mail addresses for the Settlement Class Members. Defendant will provide the Class List to the Settlement Administrator as well as Class Counsel, which shall provide the names and mailing and/or e-mail addresses for the members of the Class. The Settlement Administrator will perform a reverse lookup to identify the email addresses, and if necessary, the mailing addresses of the potential Settlement Class Members.

27.     The Class or Settlement Class refers to:

All individuals who were sent an initial written communication between by Defendant in an attempt to recover sums due between May 30, 2023, and May 30, 2024.

5

## Risks of Continued Litigation

28.     Taking into account the burdens, uncertainty and risks inherent in this litigation, Plaintiff's counsel has concluded that further prosecution of this action could be protracted, unduly burdensome, and expensive, and that it is desirable, fair, and beneficial to the class that the action now be fully and finally compromised, settled and terminated in the manner and upon the terms and conditions set forth in the settlement agreement. This is especially true considering that in order to fully prosecute this case through to trial, there would be a great deal of written discovery, depositions, and motion briefing as to the parties' claims. That said, although counsel for Plaintiff understand that there are uncertainties associated with complex class action litigation and that no one can predict the outcome of the case, Plaintiff's counsel are confident that a class of some configuration would be certified here, should the case proceed.

29.     The named Plaintiff and Class Counsel believe that the claims asserted in the action have merit, and we believe this is a strong case, which would prevail at trial, but the outcome of the case is by no means certain absent a settlement. However, taking into account the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation, including the risks in any subsequent appeal of significant orders, we believe that it is desirable that the action be fully and finally compromised, settled and terminated now with prejudice, and forever barred pursuant to the terms and conditions set forth in the settlement agreement.

30.     I believe that the terms and conditions of the Settlement Agreement are fair, reasonable and adequate to the proposed class, and that the Settlement is in the best interest of Plaintiff and the proposed Class.

//

//

6

## Kazerouni Law Group, APC's Experience and Recognitions

31.　　I am a partner at Kazerouni Law Group, APC ("KLG"), which has been retained to represent Plaintiff in the above-captioned matter since its inception. My colleagues, Mona Amini, a partner at my firm, Gustavo Ponce, an associate attorney at my firm, and Matthew McKenna of Shield Law, have been involved in this litigation throughout the entire case.

32.　　Since my admission to the State Bar of California in 2007, I have been engaged almost exclusively in the area of consumer rights litigation, in many areas, including but not limited to the Fair Debt Collection Protections Act (FDCPA), the Rosenthal Fair Debt Collection Practices Act (RFDCPA), Telephone Consumer Protection Act (TCPA), the defense of debt collection lawsuits, and class action litigation such as under the FDCPA, RFDCPA, TCPA, California's Invasion of Privacy Statute pursuant to Penal Code § 630, *et seq.* (CIPA), the Consumers Legal Remedies Act (CLRA), Unfair Competition Law (UCL) and false advertising actions concerning business practices, consumer services, and products.

33.　　My firm, Kazerouni Law Group, APC, in which I am a principal, has litigated over 15,000 cases in the past 17 years. The firm has several offices in California, such as San Diego and Costa Mesa, as well as in other states, including Phoenix, Arizona; Las Vegas, Nevada; St. George, Utah; Dallas, Texas; New York; and New Jersey.

34.　　The firm consists of approximately 20 attorneys with support staff at offices in San Diego and Costa Mesa, California, as well as paralegals.

35.　　Kazerouni Law Group, APC has extensive experience in consumer class actions and other complex litigation. My firm has a history of aggressive, successful prosecution of consumer class actions. Approximately 98% percent of my practice concerns consumer litigation in general.

36.     In *Medeiros v. HSBC Card Servs.*, No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484, at *38-39 (C.D. Cal. Oct. 23, 2017), the court noted "that several of the attorneys [at Kazerouni Law Group, APC] … have extensive experience in class action litigation").

37.     In *Maxin v. RHG & Co.*, No. 16-CV-2625 JLS (BLM), 2018 U.S. Dist. LEXIS 26795, at *12 (S.D. Cal. Feb. 16, 2018), the court noted Kazerouni Law Group, APC's "expertise in litigating CLRA, UCL, and FAL claims").

38.     In the matter of *Holt v. Foodstate Inc.*, No. 17-cv-637-LM (D.N.H. Jan. 6, 2020), in which I served as one of Co-Class Counsel, the Court at the final approval hearing (as reflected by the hearing transcript for that matter) expressed that "Class counsel are highly qualified and experienced in consumer class actions, including false advertising claims," and further stated that Abbas Kazerounian "[h]as participated in over 50 consumer protection class action suits in the last several years and he also has received extensive training in consumer protection litigation, has given presentations on the subject, including teaching a law school course on consumer law."   In a 2020 decision by Judge Cynthia Bashant in the Southern District of California, Judge Bashant found that ". . . Mr. Kazerounian [is a] skilled, experienced class action litigator[] very familiar to this Court." *McCurley v. Royal Seas Cruises, Inc.*, U.S. Dist. LEXIS 227110 (S.D. Cal. 2020).

39.     In the matter of *Barani v. Wells Fargo Bank, N.A.*, No. 12-cv-02999-GPC-KSC (S.D. Cal. March 6, 2015), the court opined that the attorneys for the plaintiff at Kazerouni Law Group, APC "are very seasoned" "in handling … class actions."

40.     My firm has a strong history of successful appellate court practice. I have

presented oral argument on several occasions to the Ninth Circuit Court of Appeals, including in the following matters:

- *Knutson v. Sirius XM Radio*, No. 12-56120 (9th Cir. 2014), which resulted in an order in favor of my client, reversing an order compelling arbitration;

- *Marks v. Crunch San Diego, LLC*, 2018 U.S. App. LEXIS 26883 (9th Cir. 2018), which resulted in an order in favor of my client on a TCPA claim in terms of the meaning of an automatic telephone dialing system;

- Three times in *Afewerki v. Anaya Law Group*, No. 15-56510 (9th Cir. April 7, 2017), *Afewerki v. Anaya Law Group*, No. 18-55100 (9th Cir. May 15, 2019), and *Afewerki v. Anaya Law Group*, No. 19-56486 (9th Cir. Jan. 21, 2021), which resulted in an order in favor of my client's FDCPA claim.

41.     My firm's successful appellate practice includes, but is not limited to:

- *Flores v. Adir Int'l, LLC*, 788 F. App'x 496 (9th Cir. 2019) (affirming order denying motion to compel arbitration of my client's claims);

- *Delisle v. Speedy Cash,* 818 Fed. Appx. 608 (9th Cir. June 9, 2020);

- *Rahmany v. T-Mobile USA Inc.*, 717 F. App'x 752 (9th Cir. 2018) (reversal of order compelling arbitration of my client's claims);

- *Self-Forbes v. Advanced Call Ctr. Techs., LLC*, 754 F. App'x 520 (9th Cir. 2018) (reversal of order granting summary judgment to defendant; my firm represented the plaintiff);

- *Chen v. Allstate,* 819 F.3d 1136 (9th Cir. 2016) (affirming denial of the defendant's motion to dismiss filed against my client); and

- *Mount v. Wells Fargo Bank, N.A.,* No. B260585, 2016 Cal. App. Unpub.

LEXIS 969 (Feb. 10, 2016) (affirming award of attorneys' fees to class counsel).

42. I have trial experience, both in state and federal courts located in California, including but not limited to:

- *Richardson v. J. Pletting, et al.,* No. 5:18-cv-00961-CJC-KES (C.D. Cal.) before Hon. Cormac J. Carney;

- *Pongsai v. American Express* – Civil Jury Trial (2021) – Lead Counsel, No. 8:19-cv-01628-DOC-JDE (C.D. Cal.) before Hon. David O. Carter;

- *Singlton v. Scott Kernan, et al*., No. 3:16-cv-02462-BAS-NLS (S.D. Cal.) (lead counsel in *pro bono* trial before Hon. Cynthia A. Bashant);

- *Alison Bastek v. Comenity Bank* (2016) Bench Trial, No. 37-2016-00017012-CU-BC-CTL, Cal. Sup. Ct. San Diego, before Judge Stauss;

- *CACH LLC vs. Ezand, Mahdad M* (August 2015) Bench Trial - Collections Case, No. 14A03873, Chatsworth Courthouse;

- *Hadsell v Madrich Law Group* (2015) – Jury Trial, No. 12CV0235-AJB(RBB), United District Court for Southern District of California before Judge Anthony Battaglia;

- *CACH LLC vs. Michael Troutman* (Sept. 2012) Bench Trial – Collections, Case Number: 37-2011-00058243-CL-R3-NC, San Diego Superior Court, before Judge Nugent;

- *Contreras v. Rent-A-Wheel* (March 2012) Jury Trial – Collections, Case Number: 37-2010-00096692-CU-CL-CTL, San Diego Superior, before Judge Lewis;

10

- *Counsel Press vs. Hyde & Swigart APC* (Jan. 2010) Bench Trial – Collections, Case Number: 37-2010-00083337-CL-R3-CTL, before Judge Meyer;

- *Eric Lira vs. Sweetwater School District* (2010) Jury Trial, Case Number: 37-2009-00080975-CU-PO-CTL, before Judge Blum;

- *Ayala, Elder Orlando v. Sayegh, Ramzi* (June 2007) Bench Trial – Breach of Contract Case, Case Number: 05K05256 Los Angeles Superior Court, Dept. 81.

43.     In 2020, I was lead counsel for the plaintiff in an evidentiary hearing before the Honorable Fernando M. Olguin in the matter of *Hill v. Quicken Loans, Inc*., No. ED CV 19-0163 FMO (SPx), 2020 U.S. Dist. LEXIS 140980 (C.D. Cal. Aug. 5, 2020), in which my client prevailed in defeating a motion to compel arbitration.

44.     My firm obtained a victory in a personal injury trial in *Luz Mendez v. City of San Diego, et al*., 37-2014-00037263-CU-PA-CTL, San Diego Superior Court ($10,750,000 verdict).

45.     I have experience arguing before the Judicial Panel on Multidistrict Litigation on three occasions, including most recently in a data privacy matter in MDL No. 2907, *IN RE: First American Financial Corporation Customer Data Security Breach Litigation*.

46.     My firm has worked with a variety of experts in consumer-related litigation, including but not limited to the area of data analysis and damages, including for example:

- *Holt v. Foodstate, Inc.*, No. 1:17-cv-00637-LM (D.N.H. Jan. 16, 2020) (expert damages analysis by Stephen F. Hamilton, Ph.D concerning diminiuation of value of consumer products; final class action settlement approval granted);

- *Franklin v. Ocwen Loan Servicing, LLC,* No. 18-cv-03333-SI (N.D.Cal.) (expert data analysis for plaintiff by Jeffrey A. Hansen of Hansen Legal

11

Technologies, Inc. regarding calls to cell phones and matching calls with call recordings; putative class action currently stayed);

- *Bastek v. Comenity Bank,* No. 37-2016-17012-CL-CL-CTL (Sup. Ct. San Diego) (2017) (expert for plaintiff on credit-related issues in Rosenthal Fair Credit Reporting Act case);

- *Stemple v. QC Holdings, Inc.*, No. 12-cv-01997-BAS(WVG), 2014 U.S. Dist. LEXIS 125313 (S.D. Cal. Sep. 5, 2014) (data analysis expert, Electronic & Speech Discovery, Inc., electronically searched scanned forms for relevant information; class certification granted);

- *Mei Hwei Lu v. American Honda Motor Co., Inc*., BC401211 (Sup. Ct. Los Angeles) (numerous experts).

47.     My firm has litigated hundreds of consumer class actions over the past six years under a variety of consumer protection statutes, such as the Telephone Consumer Protection Act, California Invasion of Privacy Act, CCP § 630, *et seq*., Unfair Competition Law, Consumer Legal Remedies Act, False Advertising Law, Fair Credit Reporting Act, Lemon Law, Fair Debt Collections Practices Act, Rosenthal Fair Debt Collection Practices Act, California Penal Code § 630, *et seq*., and other statutes and claims. Some of these cases include:

- *Burt v. Bd. of Trs. of the Univ. of R.I.*, No. 20-465-JJM-LDA, 2021 U.S. Dist. LEXIS 42059 (D.R.I. Mar. 4, 2021) (denying in part and granting in part motion to dismiss breach of contract claims involving putative class action for refund as a result of campus closure due to COVID-19);

- *Hill v. Quicken Loans, Inc*., No. ED CV 19-0163 FMO (SPx), 2020 U.S. Dist. LEXIS 140980 (C.D. Cal. Aug. 5, 2020) (denying defendant's motion to

dismiss and motion to compel arbitration of TCPA case after an evidentiary hearing);

- *Meza v. Sirius XM Radio Inc.*, No. 17-cv-02252-AJB-JMA (S.D. Cal. February 25, 2020) (was co-lead counsel; obtained order denying the defendant's motion to strike class allegations and motion to dismiss complaint where defendant challenged the constitutionality of the TCPA);

- *Holt v. Foodstate, Inc.*, No. 1:17-cv-00637-LM, 2020 U.S. Dist. LEXIS 7265 (D.N.H. Jan. 16, 2020) (finally approving class action settlement for alleged false advertising of consumable product, $2,100,000, appointed as co-lead class counsel);

- *Fishman v. Subway Franchisee Advert. Fund Tr., Ltd.*, No. 2:19-cv-02444-ODW (ASx), 2019 U.S. Dist. LEXIS 200710 (C.D. Cal. Nov. 18, 2019) (co-lead counsel; obtained order denying a defendant's motion to dismiss case for lack of personal jurisdiction where jurisdiction as based on an agency relationship);

- *Delisle v. Speedy Cash*, No. 3:18-CV-2042-GPC-RBB, 2019 U.S. Dist. LEXIS 96981 (S.D. Cal. June 10, 2019) (denying defendant's motion to compel arbitration of claims for allegedly charging excessive APR; remanded on appeal to consider intervening law, decision pending; I am co-lead counsel);

- *Ronquillo-Griffin v. TransUnion Rental Screening Solutions, Inc. et al.,* No. 3:17-cv-00129-JM-BLM (S.D. Cal. May 9, 2019) (co-lead counsel in finally approving class action settlement involving claims under Cal. Pen. Code § 630, *et seq.*);

- *Burkhammer v. Allied Interstate, LLC*, 2017 Cal. Super. LEXIS 109 (Sup. Ct. San Luis Obispo) (Co-lead counsel in RFDCPA class action finally approved on October 30, 2017);

- *Maxin v. RHG & Company, Inc.,* 2017 U.S. Dist. LEXIS 27374 (S.D. Cal. February 27, 2017) (co-lead counsel in finally approved class action settlement for $900,000);

- *Hooker v. Sirius XM Radio Inc.*, 4:13-cv-00003-AWA-LRL (E.D.Va. December 22, 2016) (Served as co-lead counsel in finally approved TCPA class action settlement with a monetary fund of $35,000,000);

- *Stemple v. QC Holdings, Inc.,* 12-cv-01997-BAS-WVG (S.D. Cal. Nov. 7, 2016) (Co-lead counsel in TCPA Class Action which was finally approved for $1,500,000);

- *Kline v. Dymatize Enters., LLC*, No. 15-CV-2348-AJB-RBB, 2016 U.S. Dist. LEXIS 142774, at *16 (S.D. Cal. Oct. 13, 2016) (co-lead counsel in finally approved class action settlement regarding slack fill claim);

- *Fox v. Asset Acceptance, LLC*, 14-cv-00734-GW-FFM (C.D. Cal. July 1, 2016) (co-lead counsel in finally approved TCPA class action for $1,000,000; $200,000 cash and $800,000 debt relief);

- *Macias v. Water & Power Community Credit Union*, BC515936 (Los Angeles Superior Court) (Co-class counsel in certified class action under the Rosenthal Fair Debt Collection Practices Act; class action settlement finally approved on April 21, 2016);

- *Newman v. AmeriCredit Financial Services*, 11-cv-03041-DMS-BLM (S.D.

Cal.) (co-lead counsel in finally approving TCPA settlement for over $6,500,000 on March 28, 2016);

- *Barrow v. JPMorgan Chase Bank, N.A.*, 1:16-cv-03577-AT (N.D. Ga) (co-lead counsel in finally approved TCPA class settlement for $2,250,000);

- *Oxina v. Lands' End, Inc.*, 3:14-cv-02577-MMA-NLS (S.D. Cal. 2016) (co-lead counsel in finally approved settlement under California Made in the USA statute);

- *LaPuebla v. BirchBox, Inc.,* 3:15-cv-00498-BEN-BGS (S.D. Cal. 2016) (co-lead counsel in finally approved settlement in unlawful auto-renewal action, allowing class members to receive credits ranging from $5 to $20 toward future purchases);

- *Barani v. Wells Fargo Bank, N.A.*, 12-CV-02999-GPC (KSC) (S.D. Cal.) (Co-lead class counsel in a settlement under the TCPA for the sending of unauthorized text messages to non-account holders in connection to wire transfers; finally approved on March 6, 2015, for over $1,000,000);

- *Medeiros v. HSBC Bank Nevada, N.A.,* 3:14-cv-01786-JLS-MDD (S.D. Cal. 2017) (Finally approved action under Penal Code 632, *et seq*. for $13,000,000);

- *Barrett v. Wesley Financial Group, LLC*, 13-cv-00554-LAB-KSC (S.D. Cal.) (Appointed co-lead class counsel in certified TCPA action);

- *Gehrich v. Chase Bank, N.A.*, 12-cv-5510 (N.D. Cal.) (finally approved for $34,000,000 in TCPA Class Action);

- *Abdeljalil v. GE Capital Retail Bank*, 12-cv-02078−JAH−MDD (S.D. Cal.) (Co-lead counsel; Class Certification granted and finally approved for

$7,000,000 in TCPA Class Action);

- *Scheuerman v. Vitamin Shoppe Industries, Inc*., BC592773 (Los Angeles Superior Court) (co-lead counsel in finally approved class action settlement for up to $638,384);

- *In Re Jiffy Lube International, Inc.*, MDL No. 2261 (Finally approved for $47,000,000.00 in value to the class);

- *Conner v. JPMorgan Chase Bank, et al*., 10-CV-1284 DMS (BGS) (S.D. Cal.) (finally approved $11,973,558 in TCPA Class Action);

- *Dowlatshahi v. McIlhenny Company*, No. 30-2017-00911222-CU-NP-CXC (Sup. Ct. Orange County Oct. 10, 2018) (granting final approval to product false advertising settlement with Mr. Kazerounian as co-lead counsel);

- *Holt v. Noble House Hotels & Resort, Ltd*., No. 17cv2246-MMA (BLM), 2018 U.S. Dist. LEXIS 177940 (S.D. Cal. Oct. 16, 2018) (achieved class certification status on CLRA claim for alleged false advertising of restaurant surcharge; appointed as class counsel);

- *McPolin v. Credit Service of Logan*, 16-cv-116 BSJ (Utah District Court) (Co-lead counsel in FDCPA class action with consumers to each receive $1,428.57, debt relief, and tradeline deletion finally approved on November 9, 2017);

- *Luster v. Wells Fargo Dealer Services, Inc.*, 15-cv-1058 (TWT) (N.D. Ga. November 8, 2017) (TCPA class action finally approved in the amount of $14,834,058.00);

- *Moreno-Peralta v. TRS Recovery Services, Inc.*, 2017 Cal. Super. LEXIS 548 (Sup. Ct. San Luis Obispo Oct. 10, 2017) (Co-lead counsel in RFDCPA class

action finally approved);

- *Caldera v. Am. Med. Collection Agency*, 2017 U.S. Dist. LEXIS 99239 (C.D. Cal. June 27, 2017) (Order certifying nationwide TCPA class action and appointing Mr. Kazerounian as co-lead counsel);

- *Reid v. I.C. System, Inc*., 2017 U.S. Dist. LEXIS 43770 (D. Ariz. March 24, 2017) (TCPA class actions finally approved in the amount of $3,500,000);

- *Couser v. Comenity Bank*, 12-cv-02484-MMA-BGS (S.D. Cal. Oct. 2, 2014) (Finally approved for $8,475,000 on May 27, 2015, served as co-lead counsel);

- *Sherman v. Kaiser Foundation Health Plan, Inc*., 13-CV-0981-JAH (JMA) (S.D. Cal.) (Settled for $5,350,000 and finally approved on May 12, 2015; served as co-lead counsel in TCPA Class Action);

- *Griffin v. Universal Protein Supplements Corporation d/b/a/ Universal Nutrition et al*., No. BC613414 (Superior Court of California, County of Los Angeles) (co-lead counsel in finally approved class action settlement alleging violation of California law involving Made in USA representations);

- *Lemieux v. EZ Lube, LLC, et al.,* 12-CV-01791-JLS-WYG (S.D. Cal.) (Served as co-lead counsel in TCPA Class Action; finally approved on December 8, 2014);

- *Hoffman v. Bank of America Corporation*, 12-CV-00539-JAH-DHB (S.D. Cal.) (California class action settlement under Penal Code 632, *et seq*., for claims of invasion of privacy. Settlement resulted in a common fund in the amount of $2,600,000; finally approved on November 6, 2014; served as co-lead counsel.);

- *Knell, et al. v. FIA Card Services, N.A.*, 13-CV-01653-AJB-WVG (S.D. Cal.) (California class action settlement under Penal Code 632, *et seq.*, for claims of invasion of privacy. Settlement resulted in a common fund in the amount of $2,750,000; finally approved on August 15, 2014; served as co-lead counsel.);

- *Rose v. Bank of America Corporation et al.,* 12-cv-04009-EJD (N.D. Cal.) (TCPA Class Action finally approved for $32,000,000 in 2014);

- *Zaw v. Nelnet Business Solutions, Inc. et al.*, No. 13-cv-05788-RS (N.D. Cal.) (Co-lead counsel in finally approved in 2014 for $1,188,110 in action under Cal. Pen. Code § 630, *et seq.*;

- *Malta, et al. v. Wells Fargo Home Mortgage, et al.*, 10-CV-1290-IEG (BLM) (Served as co-lead counsel for a settlement class of borrowers in connection with residential or automotive loans and violations of the TCPA in attempts to collect on those accounts; obtained a common settlement fund in the amount of $17,100,000; final approval granted in 2013);

- *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, 10-01777-AJB-NLS (S.D. Cal.) (Approved as co-lead counsel and worked to obtain a national TCPA class settlement where claiming class members each received payment in the amount of $70.00 per claimant; final approval granted in 2013);

- *Arthur v. SLM Corporation*, 10-CV-00198 JLR (W.D. Wash.) (nationwide TCPA Class Action settlement obtaining $24.15 million; final approval granted in 2012);

- *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009-JLS-MDD (S.D. Cal.) (Achieving one of the highest class member payouts in a TCPA action of

$1,331.25 per claimant at that time; final approval granted in 2012; served as co-lead counsel);

- *Mills v. HSBC Bank Nevada, N.A.*, Case No. 12-CV-04010-SI (N.D. Cal.) (TCPA Class Action finally approved for $39,975,000);

- *In Re: Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation*, 11-md-2286-MMA (MDD) (S.D. Cal.) (Co-lead counsel for a Plaintiff in the lead TCPA Class Action, prior to the action being recategorized through the multi-district litigation process; finally approved for $18 million);

- *In Re: Portfolio Recovery Associates, LLC Telephone Consumer Protection Act Litigation*, 11-md-02295-JAH (BGS) (Co-lead counsel for a Plaintiff in the lead TCPA Class Action, prior to the action being recategorized through the multi-district litigation process; finally approved for $18 million);

- *Mount v. Wells Fargo Bank, N.A.*, BC395959 (Sup. Ct. Los Angeles) (finally approved for $5,600,000 in action under Cal. Pen. Code § 630, *et seq*.).

48.    Many of the cases listed above, which have settled, resulted in the creation of combined common funds and/or distribution to class member in the hundreds of millions of dollars.  The outstanding results mentioned above are a direct result of the diligence and tenacity shown by Kazerouni Law Group, APC in successfully prosecuting complex consumer class actions.

49.    On December 15, 2020, I was appointed Co-Lead Interim Class Counsel in a consolidated class action entitled *Vakilzadeh v. Trustees of the California State University*, Case No. 20STCV23134, in the Superior Court of California, County of Los Angeles.

50.    Recently, I was appointed as Plaintiffs' Co-Lead Counsel in a consolidated data

breach class action entitled *Hellyer, et al. v. Smile Brands Inc., et al*, Lead Case: 8:21-cv-01886-DOC-ADSx (C.D. Cal. February 1, 2022), which was finally approved for over $5 million.

51.    Recently, I was also appointed Plaintiffs' Liaison Counsel in a consolidated data breach class action captioned *In re Planned Parenthood Los Angeles Data Incident Litigation*, Lead Case No. 21STCV441006 (Los Angeles Superior Court, April 15, 2022), which was finally approved.

52.    Recently, I was also appointed as Plaintiff's Interim Co-Lead Counsel in a consolidated data breach class action captioned *In re Loan Depot Data Breach Litigation*, Lead Case: 8:24-CV-00136-DOC-JDEx (C.D. Cal. April 17, 2024) (preliminarily approved)

53.    In addition to my class action experience, I have experience in commercial litigation and large-scale products liability litigation including a $2.5 million dollar settlement in *Mei Lu Hwei, et al v. American Honda Motor Co., Inc.*, et al. (Case No. BC401211 in Superior Court of California for County of Los Angeles).

54.    My firm has regularly litigated cases in state and federal courts and has reached numerous confidential seven-figure settlements against internationally known companies.

## TRAINING, SPEAKING/TEACHING ENGAGEMENTS AND ASSOCIATIONS

55.    I am an adjunct professor at California Western School of Law where I teach a three-credit course in consumer law from 2014 to the present.

56.    The following is a non-exhaustive list of training conferences I have attended:

- Four-day National Consumer Law Center Conference; Nashville, TN –2008;

- Three-day National Consumer Law Center Conference; Portland, OR -2008;

- Three-day National Consumer Law Center Conference; San Diego, CA - 2009;

- Three-day National Consumer Law Center Conference; Seattle, WA -2011;

- National Consumer Law Center Conference in 2013;

- National Consumer Law Center Conference in 2014;

- National Consumer Law Center Conference in 2015;

- National Consumer Law Center Conference in 2016;

- 3-day CAALA Conference; Las Vegas, NV in 2009, 2013, 2015, 2016;

- 3-day CAOC Conferences in 2014, 2015, 2016, 2017, 2018, 2019, 2020, and 2021.

57.     As one of the main plaintiff litigators of consumer rights cases in the Southern District of California, I have been requested to and have made regular presentations to community organizations regarding debt collection laws and consumer rights. These organizations include Whittier Law School, Iranian American Bar Association, Trinity School of Law and Chapman Law School, University of California, Irvine, and California Western School of Law.

58.     I was the principal anchor on Time Television Broadcasting every Thursday night as an expert on consumer law generally between 2012 and 2013.

59.     I am also often called upon to give legal analysis on popular television and radio shows such as Dr. Drew Midday Live and Fox 5.

60.     In addition to attending the above conferences, I also was a speaker or panelist at the following non-exhaustive list of conferences, seminars, or webinars:

- Speaker at ABA National Conference, Business Litigation Section; Trends in Consumer Litigation; San Francisco, CA – 2013;

- Speaker at the ABA TCPA National Webinar (Consumer Protection, Privacy & Information Security, Private Advertising Litigation, and Media & Technology Committees) – September 2013;

- Spoke at the 2014 ACA Conference in November 2014;

- Speaker at ACI Conference in Dallas, TX in September of 2016 concerning The Borrower's Perspective: Insight From The Plaintiff's Bar and Consumer Advocates;

- Speaker on TCPA panel in September of 2016 at the Annual Consumer Financial Services Conference.

- Lectured on Class Action Trends at the CAOC 2015 Conference in San Francisco.

- Lectured in a webinar, ABA Telephonic Brown Bag re: TCPA, on August 25, 2015.

- I lectured on the TCPA before the ABA Business Law Section, Consumer Financial Services Committee at an event in Utah entitled, "Impact of the FCC's 2015 Rulings on TCPA Litigation." in January 2016

- In March of 2016, I moderated the Judges Panel on Class Action Trends and Federal Litigation Trends at the NCLC Conference.

- In May of 2016, I spoke on Class Action Trends at the CAOC seminar in Palm Springs, California.

- I spoke on privacy rights on a panel before the California State Bar Convention in 2016.

- I spoke at the 22nd National Forum on Residential Mortgage Litigation & Regulatory Enforcement conference on January 22, 2017.

- Presented at the 2017 CAOC seminar in Palm Springs, California.

- Speaker at national webinar on June 7, 2017 for the CAOC, entitled,

"Understanding the Fair Debt Collection Practices Act", and again on August 1, 2018.

- In August of 2018, I was one of three presenters on another national webinar on the TCPA titled "From Both Sides: Plaintiff and Defense Perspective on the TCPA".

- In August of 2018, I was one of two presenters on a national webinar on the TCPA titled "TCPA Takes a New Turn With the 9th Circuit's Ruling in *Marks v. Crunch San Diego, LLC*."

- Speaker at National Webinar by the ABA Consumer Financial Services Committee on TCPA Update – "The D.C. Circuit's TCPA Decision on the FCC Ruling, held on March 22, 2018.

- Spoke at 2018 Inland Empire CAOC Convention on "Class Action Hot Topics" - May 2018.

- On January 11, 2019, I spoke on a panel entitled "TCPA Litigation: Where is it Heading Now?" at the 2019 Annual American Bar Association Conference in Miami.

- I spoke on the FDCPA at National Consumer Law Center's National Convention in Las Vegas in March, 2019.

- Spoke on "The interplay between Personal Injury and Class Actions" at the CAOC Sonoma Seminar 2019.

- Presented at Mass Torts Made Perfect on Modern Trends in the TCPA in April of 2019.

- Speaker at the CAOC Inland Empire Seminar in Palm Springs on "Dealing with

Overly Ambitious Lien Holders, on May 2, 2019.

- Speaker for the California Lawyers Association March 3, 2020 Webinar on "Recent Developments in Internet and Privacy Law Affecting California Consumer Financial Service Providers" presented by the Internet and Privacy Law Committee; and the Consumer Financial Services Committee.

- Speaker at San Diego Law School Class Action Forum 2020 on Consumer Class Actions in March 2020.

- Speaker for a webinar for CAOC on April 21, 2020 on "Data Breach Basics."

- Speaker for MTMP (Mass Torts Made Perfect) Connect Webinar Series on Class Action Data Breaches – June 4, 2020.

- Speaker at MTMP Class Action Track – October 14, 2020 on "Nuts & Bolts of Mediating a Class Action"

- Speaker at 2021 Palm Springs Seminar Panel on Hot Topics In Mass Tort And Class Actions: What You Don't Know Might Get You Burned on "Recent Developments in Labeling Class Actions."

- Participant in Zoom webinar for the ARM Industry, Post-*Hunstein*, Legal and Operational Insights and a Discussion Amongst Plaintiff's Attorneys (April 29, 2021).

- Speaker at 2021 CAOC Sonoma Virtual Conference on Nuts & Bolts of Fighting Arbitration.

- Speaker at 2021 CAOC San Franscisco conference on Using Arbitrations as a Sword.

- Speaker at 2022 CAOC Sonoma Seminar on March 11, 2022 on "Use of

Technology in Litigation In the Pandemic Age."

- Speaker at the 2022 NCLC Conference in Orlando, Florida on "Understanding the FDCPA" in May 2022.

- Speaker at October 2022 Mass Torts Made Perfect Conference on Nuts & Bolts of Mass Arbitrations.

- Speaker at the 2022 CAOC Annual Convention on Hot Topics Surrounding Consumer Class Actions.

- Speaker at the March 2023 CAOC Sonoma Seminar on Recent Trends in Mass Torts and Class Actions.

- Speaker at the April 2023 Mass Torts Made Perfect Conference on Mass Arbitrations.

- Speaker on July 2023 Vimeo Webinar regarding Attorney Update on Regulation F.

- Speaker at the October 2023 Mass Torts Made Perfect Conference on Class Action Structures and Service Awards that Pass Muster.

- Speaker at the 2023 National Consumer Law Center National Conference on TCPA Developments.

- Speaker at the 2024 CAOC Conference in Sonoma on Pre-Trial Nuts and Bolts of Federal Litigation March 2024.

- Speaker at the April 2024 MTMP – Mediation of Complex Cases

- Speaker a "A Conversation with Plaintiff's Attorneys" on Accounts Recovery National Webinar" in July 2024

- Speaker/Moderator at Consumer Attorneys of California (CAOC)

Napa/Sonoma Travel Seminar on "Mediation: All You Wanted To Know But Were Afraid To Ask" in March 2025

- Speaker at Consumer Attorneys of California (CAOC) Palm Springs Seminar on "Mediation Mastery: The Latest Strategies for Successful Negotiations" on May 2, 2025.

- Speaker at Practising Law Institute's Hot Topics in Advertising Law 2025 on "Class Action Quicksand: Avoiding Common Traps for Advertisers" on June 3, 2025.

61. I have also been published several times, including but not limited to the following publications:

- I wrote an entitled, *Principles of Litigating Consumer Class Actions*, was published in the February 2015 Edition of the Advocate.

- In 2016, I wrote an article entitled "*Finding a Balance*" that was published in the Nutrition Business Journal, concerning a lawsuit filed under the Racketeer Influenced and Corrupt Organization Act.

- I was published in the Daily Journal in September of 2016, with the title, "*The FDCPA: The Forgotten Statute.*"

- I wrote an article entitled, *Collateral Damage, Beyond the personal injury: When creditors and collection agencies stalk your client*, published in the September 2017 edition of Plaintiff magazine.

- I wrote an article entitled, *Finding a Balance,* published in the Nutrition Business Journal, Special Edition, 2016.

- I wrote an article entitled, *The Impact of Epic Systems Corp. v. Lewis: How*

*Arbitration Will Impact Consumers Going Forward*, The Travel Magazine, 2018.

- I wrote an article entitled, *Fundamentals of Claim Representatives in Class Actions*, Forum Magazine 2024.

62.     In September 2017, I was honored to receive the 2017 Distinguished Alumnus of the Year Award from California Western School of Law, which is presented to alumni who distinguish themselves in their professional life and who embody high ethical standards and commitment to community service.

63.     I was selected for membership into The National Trial Lawyers: Top 40 Under 40 in 2016, 2017 and 2018.  Likewise, my co-counsel Mona Amini was also chosen for membership into The National Trial Lawyers: Top 40 Under 40 in 2022 and 2023.

64.     I was named Rising Star by San Diego Daily Tribune in 2012.

65.     I was named a Super Lawyer by Super Lawyers Magazine beginning in 2016 through present. I was selected as a Rising Star in Super Lawyers Magazine in 2013, 2014 and 2015.   Similarly, my colleague Ms. Amini was also selected by selected by Super Lawyers in 2021-2025 for its list of Southern California Rising Stars, an honor reserved for those lawyers who exhibit excellence in practice. Only 2.5% of attorneys in Southern California receive this distinction.

66.     I was named among Top 50 Attorneys in Orange County and Top 100 in Southern California by Super Lawyers Magazine from 2021 through present.

67.     I am a member in good standing of the following local and national associations:

- American Bar Association;

- Consumer Attorneys Association of Los Angeles;

27

- Consumer Attorneys of California – Executive Committee; 3rd Vice-President;

- Federal Bar Association;

- National Association of Consumer Advocates;

- Orange County Bar Association;

- Orange County Trial Lawyers Association;

- Served twice as the President of the Orange County Chapter of the Iranian American Bar Association;

- The Leading Forum of the American Association of Justice;

- Public Justice Foundation.

68.     Throughout this litigation, I have strived to represent Plaintiff and the Settlement Class Members fairly, responsibly, vigorously, and adequately in this action. I believe that I have been successful in that endeavor thus far and shall continue in this vein.

69.     Class Counsel will commit the necessary resources and time to represent the interests of the proposed class.  Kazerouni Law Group, APC will commit multiple lawyers and support staff, as necessary, to the case, including my fellow partner, Mona Amini, and associate Gustavo Ponce, as well as Matthew Mckenna from Shield Law, who have been involved in the litigation for nearly two years. Kazerouni Law Group, APC also has the financial resources to represent Plaintiff and the Settlement Class.

70.     Class Counsel have considered the expense, complexity, and delay associated with continued litigation. Class Counsel carefully analyzed the settlement considering the parties' respective positions and determined that the immediate, certain, and substantial payment offered by Defendant to resolve this matter are fair, reasonable, and adequate relief to the Class.

71.     Based on my experience with similar class actions, including class action settlements in call recording cases and my investigation, research, and knowledge of the specific facts and legal issues in the Action, I believe that the Settlement Agreement is fair, reasonable, adequate, and warrants preliminary approval.

I declare under penalty of perjury under the laws of  the State of Wisconsin and the United States of America that the foregoing is true and correct, and that this declaration was executed on August 8, 2025.

*/s/Abbas Kazerounian*
Abbas Kazerounian, Esq.
*Attorney for Plaintiff*

# EXHIBIT A

<u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Class Action Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiff Mahlon Oie ("Plaintiff") on behalf of himself and the Class Members (as defined below) and Defendant Husch Blackwell LLP ("Defendant"). Plaintiff and Defendant are collectively referred to herein as the "Parties."

Plaintiff, Class Counsel (as defined below), and Defendant hereby stipulate and agree that, in consideration of the promises and covenants set forth below in this Agreement and upon entry by the Court of a Final Approval Order (as defined below), all claims of Plaintiff and the Class Members in the action, entitled *Mahlon Oie v. Husch Blackwell LLP*, Case No. 2:24-cv-00672-LA (the "Action"), shall be forever and fully settled, compromised, and released upon the terms and conditions contained herein.

1.    <u>RECITALS</u>

WHEREAS, on May 30, 2024, Plaintiff filed a Class Action Complaint in the Action alleging that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (the "FDCPA");

WHEREAS, The Action alleges, among other acts, that Defendant is a debt collector that unlawfully attempted to collect an alleged debt by sending Plaintiff and Class Members communications which failed to include certain required disclosures in violation of the FDCPA;

WHEREAS, Defendant denies all allegations of liability and wrongdoing asserted in the Action, deny that they are debt collectors as defined by the FDCPA, denies that Plaintiff and the Class Members have been damaged by any acts or omissions by Defendant, and have asserted multiple defenses, both affirmative and otherwise in Defendant's Answer to the Complaint in the Action;

1

WHEREAS, without admitting or conceding fault or liability, Defendant has agreed to settle all alleged disputes regarding the alleged debt collection activities between Defendant, on the one hand, and Plaintiff and the Class Members on the other hand, during the Class Period (as defined below);

WHEREAS, this Agreement resulted from and is the product of extensive investigation and evaluation of the facts and law concerning the claims asserted in the Action and good faith and arm's length settlement negotiations. During this time period, Counsel for the Parties engaged in discussions regarding the factual circumstances as well as potential strengths and weaknesses of the allegations in support of, and defenses to, the Action. Counsel for the Parties exchanged requested factual information, proposals, and discussed resolution. After months of negotiations, and the exchange of discovery, Counsel for the Parties reached a tentative agreement with regard to the material terms of the proposed settlement, which are memorialized in this Agreement. The Parties did not discuss attorneys' fees, costs, and expenses, or service awards for the Class Representative, prior to reaching an agreement as to the material terms of the relief for the Settlement Class.

WHEREAS, The Parties recognize and acknowledge the uncertain outcome and the risk of any litigation, including establishing the claims and defenses asserted in this Action, the difficulties and expense and length of continued proceedings necessary to prosecute the claims through trial, possible appeals and ancillary actions, and the delay of continued litigation. Balancing this against the benefits of the Settlement the Class Members, Class Counsel believes the Settlement as provided in this Agreement is in the best interests of the Class Members and represents a fair, reasonable, and adequate resolution of the Action.

2

WHEREAS, subject to preliminary approval and final approval by the Court, as required by Federal Rule of Civil Procedure 23(e), and subject to and in exchange for the remaining provisions herein, the Parties desire a full, complete and final settlement and resolution of all existing disputes and claims as set forth herein, and to fully, finally and forever resolve, discharge and release all rights and claims of Plaintiff and the Class Members;

WHEREAS, the Parties understand, acknowledge and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims. This Agreement is inadmissible as evidence except to enforce the terms of the Agreement. The Parties desire and intend to effect a full, complete and final settlement and resolution of all existing disputes and claims as set forth herein;

NOW THEREFORE, subject to Court approval, as hereinafter provided, it is hereby agreed by the Parties that, in consideration of the promises and covenants set forth in this Agreement and upon the entry by the Court of a final order approving the settlement and directing the implementation of the terms and conditions of the settlement as set forth in this Agreement, the Action, including the claims asserted by the Plaintiff and the Class Members, shall be settled and compromised upon the terms and conditions contained herein.

2. DEFINITIONS

As used in this Agreement, in addition to any definitions elsewhere in this Agreement, the following terms shall have the meanings set forth below:

2.1 "Action" means the civil action captioned, *Mahlon Oie v. Husch Blackwell LLP*, Case No. 2:24-cv-00672-LA, pending in the U.S. District Court for the Eastern District of Wisconsin.

2.2 "Agreement" means this Class Action Settlement Agreement and Release.

3

2.3     "CAFA Notice" refers to the notice requirements imposed by 28 U.S.C. § 1715(b).

2.4     "Class" means all individuals who were sent an initial written communication by Defendant in an attempt to recover sums due between May 30, 2023, and May 30, 2024.  Excluded from the Class are the Judge to whom the Action is assigned, any member of the Court's staff and immediate family, and all persons who are validly excluded from the Class. Defendant estimates that there are approximately 303 individuals in the Class.

2.5     "Class Member" means those persons who are members of the Class who do not timely and validly request exclusion from the Class.

2.6     "Class Counsel" means Abbas Kazerounian, Mona Amini, Esq., and Gustavo Ponce, Esq., of the law firm Kazerouni Law Group, APC and Matthew McKenna, Esq. of the law firm Shield Law, LLC.

2.7     "Class Notice" means any notice ordered by the Court pursuant to Federal Rule of Civil Procedure 23(c)(2).  A description of the contemplated Class Notice is provided in Section 9 of this Agreement.

2.8     "Class Period" means the time period from May 30, 2023, to May 30, 2024.

2.9     "Class Representative" means Plaintiff Mahlon Oie.

2.10    "Court" means the United States District Court for the Eastern District of Wisconsin.

2.11    "Cy Pres Distribution" means monies that may be distributed in connection with the Settlement pursuant to Section 11.2 of this Agreement.

2.12    "Defendant" means Defendant Husch Blackwell LLP.

4

2.13    "Defendant's Counsel" means Tomio Narita, Esq. and Scott Hyman, Esq. of the
        law firm Womble Bond Dickinson (US) LLP

2.14    "Effective Date" means the fifth (5th) business day after the last of the following
        dates:

        (A)     The Parties and their Counsel have executed this Agreement;

        (B)     The Court has entered the Final Approval Order; and

        (C)     The applicable time for filing an appeal has expired or, if appeals are filed,
                the date on which the Final Approval Order has been affirmed by the
                appellate court to which such appeals have been taken and such
                affirmances are no longer subject to further appeal or review.

2.15    "Escrow Account" means a non-interest bearing checking account established at a
        financial institution into which monies shall be deposited as set forth by this
        Agreement.

2.16    "Final Approval Hearing" means the hearing set by the Court for the purpose of
        determining the fairness, reasonableness, and adequacy of this Agreement in
        accordance with class action procedures and requirements under applicable
        law(s), including Rule 23 of the Federal Rules of Civil Procedure.

2.17    "Final Approval Order" means the order and judgment that the Court enters upon
        subsequent to the Final Approval Hearing, finally approving the Settlement,
        substantially in the form of the proposed order attached hereto as Exhibit 1,
        approving the terms of this Agreement as fair, reasonable, and adequate and in the
        best interests of the Settlement Class as a whole in accordance with the Federal

5

Rules of Civil Procedure. "Final Approval" occurs on the date that the Court enters the Final Approval Order.

2.18 "Funding Date" means the date, which is no later than thirty (30) days after the Effective Date, on which Defendant shall cause payment to be made into the Settlement Fund account pursuant to the method set forth in Section 11 of this Agreement.

2.19 "Judge" shall mean any judge of the United States District Court for the Eastern District of Wisconsin, including Honorable Lynn Adelman.

2.20 "Mail Notice" means the notice that the Settlement Administrator will provide pursuant to Section 9 of this Agreement to the Class Members, subject to approval by the Court, via U.S. Mail and substantially in the same form attached hereto as Exhibit 2. In the event that U.S. Mail Notices are returned as undeliverable or are otherwise unsuccessfully delivered to a Class Member in substantially the same form as that attached as Exhibit 2, a summary Notice will be sent via email.

2.21 "Notice Deadline" shall have the meaning set forth in Section 8.1(C) of this Agreement.

2.22 "Opt-Out Request(s)" and "Opt-Out Objection Deadline" shall have the meaning set forth in Sections 8.1(E), and 12.1 of this Agreement.

2.23 "Parties" means Plaintiff and Defendant.

2.24 "Preliminary Approval Order" means the order that the Court certifies the Settlement Class for settlement purposes and grants preliminary approval to the settlement, substantially the same proposed form of which is attached hereto as

6

Exhibit 3 and/or as ultimately issued by the Court. "Preliminary Approval" occurs on the date that the Court enters the Preliminary Approval Order.

2.25    "Released Claims" means all claims to be released as set forth in Section 16 of this Agreement.  The "Releases" means all of the releases contained in Section 16 of this Agreement.

2.26    "Released Parties" means and refers to Defendant and their past and present subsidiaries, predecessors in interest and/or ownership, successors in interest and/or ownership, partners, licensees, assignees, insurers, including claims under any and all insurance policies, estates, and other affiliates and/or related entities, and each of the foregoing's respective past and present officers, directors, attorneys, shareholders, indemnitees, predecessors, successors, trusts, trustees, equity and non-equity partners, associates, principals, divisions, employees, insurers, members, agents, representatives, heirs, and assigns.

2.27    "Releasing Parties" means Plaintiff and every Class Member who does not timely and properly opt out of the Settlement as required pursuant to this Agreement and the Notice, on behalf of themselves and their heirs, executors, administrators, representatives, agents, successors, predecessors-in-interest, assigns, or any other person or entity claiming through the Plaintiff or Class Members.

2.28    "Settlement" means the settlement into which the Parties have entered to resolve the Action. The terms of the Settlement are set forth in this Agreement and the attached exhibits, which are incorporated by reference herein.

2.29    "Settlement Administrator" means Simpluris, Inc., which is an independent, third-party settlement administrator associated with administering the settlement,

7

providing notice to the Settlement Class, processing claims, distributing

settlement payments and other activities customarily associated with

administering class action settlement.

2.30    "Settlement Award" means a cash payment that may be available to eligible Class

Members pursuant to Section 11 of this Agreement.

2.31    "Settlement Fund" means the amount of NINE THOUSAND NINETY

DOLLARS AND ZERO CENTS ($9,090.00) to be paid by Defendant as set forth

in this Agreement to the Class Members.

2.32    "Settlement Termination Date" means and refers to the date, if any, that any Party

exercises its right to terminate this Agreement under the terms thereof.

2.33    "Settlement Website" means the settlement website set up by the Settlement

Administrator which shall permit Settlement Class Members to access pertinent

papers relating to the Action.

3.    <u>SETTLEMENT PURPOSES ONLY</u>

3.1    General. This Agreement is made for the sole purpose of settlement of the Action

on a class wide basis, including the settlement of all related individual claims

made by Plaintiff.  The settlement of the Action is expressly conditioned upon the

entry of a Preliminary Approval Order and a Final Approval Order by the Court.

In the event that the Court does not execute and file the Order of Final Approval,

or in the event the Order of Final Approval does not become final for any reason,

or in the event that the Effective Date, as defined herein, does not occur, this

Agreement shall be deemed null and void ab initio and shall be of no force and

8

effect whatsoever, and shall not be referred to or utilized for any purpose whatsoever.

4.    JURISDICTION

4.1    The Parties agree that the Court has, and shall continue to have, jurisdiction to make any orders as may be appropriate to effectuate, consummate, and enforce the terms of this Agreement, to approve awards of attorney's fees and costs pursuant hereto, and to supervise the administration of and the distribution of money funded pursuant to this Agreement.

5.    SETTLEMENT TERMS AND BENEFITS TO CLASS

5.1    Settlement Fund.  Defendant shall pay to the Class the total sum of THIRTY DOLLARS AND ZERO CENTS ($30.00) per Class Member who does not submit a valid opt out to settle the Action with Plaintiff and the Class Members and will obtain a release of all Released Claims against all Released Parties as set forth herein.  Defendant estimates that there are approximately 303 individuals in the Class. The Settlement Fund will be used to pay Class Members who have not submitted a valid Opt-Out Request in accordance with the terms of this Agreement.  In no event will Defendant's payment obligations to pay Class Members and Plaintiff exceed the Settlement Fund.

5.3    Settlement Administration Costs.  The Parties agree and acknowledge that Defendant will separately pay (in an amount not to exceed as stated below) reasonable costs, fees, and expenses incurred by the Settlement Administrator in the course of providing the Class Notice and other services related to the administration and payment of the Settlement including, but not limited to, costs

9

of printing and providing notice to Class Members, the costs associated with creating and maintaining a Settlement Website, and costs for Mail Notice, and any different or additional notice that might be ordered by the Court.

6.    ATTORNEY'S FEES, COSTS, AND PAYMENT TO PLAINTIFF

6.1    Attorney's Fees and Costs. Subject to the Court's approval, Defendant will pay a sum not to exceed NINETY THOUSAND DOLLARS AND ZERO CENTS ($90,000.00) as attorney's fees and costs to the Settlement Administrator to be distributed to Class Counsel.  No interest will accrue on such amounts at any time. Defendant shall not oppose Class Counsel's motion or request for attorney's fees and costs, so long as it neither seeks nor exceeds $90,000. Class Counsel will file a motion requesting an award of attorney's fees and costs at least thirty (30) days prior to the Court's Final Approval Hearing. The attorneys' fees, costs, and expenses of Class Counsel as it relates to this Action shall be paid by Defendant to Class Counsel within thirty (30) days of the Effective Date (or as such is otherwise ordered by the Court).

6.2    Incentive Award to Plaintiff.  Plaintiff, Mahlon Oie, will also request the Court to award her an incentive award of TWO THOUSAND, FIVE HUNDRED DOLLARS AND ZERO CENTS ($2,500.00) for the time and effort he has personally invested in this Action as the Class Representative.  No interest will accrue on such amounts at any time. The Incentive Award will be paid to the Settlement Administrator within thirty (30) days of the Effective Date. Court approval of any incentive award will not be a condition of the Settlement.

10

Defendant will not oppose or object to an incentive award that does not exceed $2,500.

6.3      In the event the Court denies the attorneys' fees/costs request or awards less than the amounts sought, this Settlement shall continue to be effective and enforceable by the Parties.

7.      <u>CONDITIONS OF SETTLEMENT</u>

7.1      Performance of the obligations set forth in this Agreement is subject to each of the following material conditions:

(A)      Execution of this Agreement by Defendant, Plaintiff, and Class Counsel.

(B)      Execution and entry by the Court of the Preliminary Approval Order.

(C)      Mailing of the notices described in Section 9 below.

(D)      The Court conducting a Final Approval Hearing.

(B)      Execution and entry by the Court of the Final Approval Order.

(F)      Execution and entry of Judgment by the Court.

(G)      Expiration of any applicable appeals or if none filed, expiration of periods of time in which to appeal.

7.2      The Parties hereby covenant and agree to cooperate reasonably and in good faith for the purpose of achieving occurrence of the conditions set forth above, including, without limitation, timely filing of all motions, papers and evidence necessary to do so, and refraining from causing or encouraging directly or indirectly any appeal or petition for writ proceedings by third parties seeking review of any Order contemplated by this Agreement. Class Counsel represents and warrants that it has authority to take all such actions required pursuant to this

11

Agreement, and that by doing so are not in breach or violation of any agreement with Plaintiff or any third party.

8.    PRELIMINARY APPROVAL OF THE SETTLEMENT

8.1    Preliminary Approval Motion.  As soon as practical after the execution of this Agreement, the Parties shall move the Court for entry of the Preliminary Approval Order.  Pursuant to the motion for preliminary approval, the Parties will request that:

(A)    The Court preliminarily approve this Agreement and the Settlement reflected herein as fair, adequate and reasonable to the Class, and within the reasonable range of possible final approval;

(B)    The Court approve the form of Class Notice and find that the notice program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Class and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23;

(C)    The Court directs that notice be provided to the Class, in accordance with this Agreement, within thirty (30) days following entry of the Preliminary Approval Order (the "Notice Deadline");

(D)    The Court shall establish a procedure for Class Members to object to the Settlement or exclude themselves from the Class;

(E)    The Court shall set a deadline forty-five (45) days after the Notice Deadline, after which no one shall be allowed to object to the Settlement or exclude himself or herself or seek to intervene (the "Opt-Out and Objection Deadline");

12

(F)    The Court shall, pending final determination of whether the Settlement should be approved, stay all proceedings except those related to effectuating the Settlement; and

(J)    The Court shall schedule a hearing to consider Final Approval of the Settlement, which shall be scheduled no earlier than thirty (30) days after the Opt-Out and Objection Deadline.

8.2    Stay of Proceedings. All proceedings in the Action will be stayed following entry of the Preliminary Approval Order, except as may be necessary to implement the Settlement or comply with the terms of the Settlement. Pending determination of whether the Settlement should be granted Final Approval, the Parties agree not to pursue any claims or defenses otherwise available to them in the Action.

9.    <u>ADMINISTRATION AND NOTIFICATION PROCESS</u>

9.1    Settlement Administrator. The Settlement Administrator shall administer the Settlement. Defendant will reasonably cooperate in the notice and administration process by providing the Settlement Administrator and Class Counsel, on a confidential basis, with access to the names and mailing and/or e-mail addresses for persons in the Class for whom Defendant have such information (the "Class List"). Defendant will confirm the process of generating and providing the Class List with Class Counsel and will provide the list to the Settlement Administrator and Class Counsel within 30 days after execution of this Agreement.

9.2    Mail Notice. The Settlement Administrator shall, within fourteen (14) calendar days after the entry of the Preliminary Approval Order, or earlier if possible, provide individual notice to the most recent mailing address from the list of

13

members of the Class, which shall contain a claim ID. The mailing of the Notice shall be handled by the Settlement Administrator in accordance with its regular procedures for updating addresses through the National Change of Address database maintained by the United States Postal Service where available. The Settlement Administrator shall perform skip tracing for all returned direct mail. Specifically, the Settlement Administrator will provide Notice to Settlement Class Members initially via U.S. Mail in substantially the same form as that attached as Exhibit 2 to identifiable Class Members for whom Defendant have mailing addresses. In the event that any Mail Notices are returned as undeliverable or are otherwise unsuccessfully delivered to a class member, a summary Notice will be sent via email in substantially the same form as that attached as Exhibit 2. Email addresses will be obtained from Defendant to the extent Defendant is in possession of such contact information, otherwise emails will be obtained by the Settlement Administrator through commercially or publicly available "reverse lookup" sources. If the Settlement Administrator is unable to find a valid email address via a reverse look up, the Settlement Administrator will check a national database for a better email and/or mailing address.

9.3     At least ten (10) days prior to the filing of the Final Approval Motion, the Settlement Administrator shall provide Plaintiff's counsel a declaration of compliance with CAFA.

10.   SETTLEMENT AWARDS

10.1     Settlement Awards to Class Members. All Class Members who have not submitted a valid and timely Opt-Out Request will receive a Settlement Award,

14

which shall be paid by check, as set forth below. Defendant shall pay each Class Member THIRTY DOLLARS AND ZERO CENTS ($30.00).

11. DISTRIBUTION OF SETTLEMENT AWARDS

11.1 Settlement Award Payments. Within fourteen (14) days after the Opt-Out Deadline, the Settlement Administrator shall notify both Class Counsel and Defendant in writing of the amount necessary to fund payments to the Class Members that have not requested exclusion from the Class. The Settlement Administrator shall also provide both Class Counsel and Defendant with a list of all of the submitted Opt-Out Requests that are received. The validity of the Opt-Out Requests will be determined as set forth in the Preliminary Approval Order. The Settlement Award shall be paid by check. The Settlement Administrator shall send by first-class mail a check to each eligible Class Member (Class Members who have not submitted a valid and timely Opt-Out Request) within forty-five (45) days of the Effective Date. The Settlement Administrator will perform skip tracing and re-mailing, as necessary. Checks will be valid for one-hundred twenty (120) days from the date on the check. The amounts of any checks that are returned as undeliverable or that remain uncashed more than one-hundred twenty (120) days after the date on the check will be distributed as directed in Section 11.2.

11.2 Remaining Funds. Money in the Settlement Fund that has not been distributed following the expiration of checks issued pursuant to section 11.1, or any money in the Settlement Fund that has not otherwise been distributed (the "Remaining Funds"), shall be paid as *cy pres* to National Consumer Law Center as approved

15

by the Court.  No money remaining in the Settlement Fund shall revert to or otherwise be paid to Defendant.

11.3    Funding.  Defendant shall have the Settlement Fund, the Settlement Administration Costs, the Incentive Award, and the Attorneys' Fees and Costs approved by the Court, deposited with the Settlement Administrator within thirty (30) days of the Effective Date.

12.    OPT-OUTS, APPEARANCES, AND OBJECTIONS

12.1    Opt-Out Requirements.  Class Members may request exclusion from the Settlement by sending a written request to the Settlement Administrator and Class Counsel at the address designated in the Class Notice, to be postmarked no later than the Opt-Out and Objection Deadline, which is 75 days after the date of the entry of the Preliminary Approval Order.  Opt-Out Requests must: (i) be signed by the person in the Class who is requesting exclusion; (ii) include the full name, phone number, email, current address of the person in the Class requesting exclusion; (iii) claim identification number included in the Notice, and (iv) include the following statement: "I/we request to be excluded from the settlement in the Oie Husch Blackwell FDCPA class action."  No request for exclusion/opt out will be valid unless all of the information described above is included.  No person in the Class, or any person acting on behalf of, or in concert, or participation with that person in the Class, may exclude any other person in the Class from the Class. Except for those Class Members who have properly and timely postmarked an Opt-Out Request, all Settlement Class Members will be bound by this Settlement Agreement and the Final Judgment to be entered. For an

16

Opt-Out Request to be valid, a Settlement Class Member must exclude

themselves from the entire Settlement.

12.2 Retention of Exclusions.  The Settlement Administrator will retain a copy of all

requests for exclusion and shall provide copies of any such requests to counsel for

the Parties.  Counsel for the Parties shall keep any such opt-out information

confidential and use it only for purposes of determining whether a person in the

Class has properly opted out.

12.3 Entry of Appearance.  Pursuant to Rule 23(c)(2)(B)(iv), a class member may enter

an appearance through his or her own attorney at their own expense by filing the

appearance with the Clerk.

12.4 Right to Object.  Any Class Member may appear at the Final Approval Hearing to

object to the proposed Settlement and/or to the application of Class Counsel for

an award of attorneys' fees and costs and/or the incentive awards, but only if the

Class Member has first filed a written objection with the Clerk of Court, in

accordance with the requirements set forth below, by the Opt-Out and Objection

Deadline, which is 75 days after the date of the entry of the Preliminary Approval

Order.  Any Class Member who does not provide a written objection in the

manner described in this Section shall be deemed to have waived any objection

and shall forever be foreclosed from making any objection to the fairness,

reasonableness, or adequacy of the Settlement or the award of any attorney's fees

and costs and/or incentive awards.  Further, any Class Member who intends to

appear at the Final Approval Hearing must file and serve on all parties a Notice of

Intention to Appear with the Court.

17

12.5    Objection Requirements.  All Class Members have the right to object to this

settlement.  Objections must be sent to the Settlement Administrator at the address

designated in the Mail Notice, to be postmarked no later than the Opt-Out and

Objection Deadline.

12.6    For an objection to be valid, it must be in writing, must be mailed to the Court and

submitted to Class Counsel and Defendant's counsel. Any objection must set forth

the name and case number of the Action, Class Member's name, address, and

telephone number, and all arguments, citations and evidence supporting the

Objection, and a statement of whether the objecting Class Member intends to appear

at the hearing for final approval of the class action settlement, and whether the

objecting Class Member intends to appear at the hearing with or without counsel. If

Class Member is represented by counsel, counsel's name, address, email address and

telephone number shall be set forth in any Objection. The objecting Class Members

shall also indicate in the objection the name and case number of all cases in which

the objecting Class Members have previously submitted any objections to the

settlement of any class action cases, whether the objection was filed by the objecting

Class Member on his or her own behalf or on behalf of someone else. The Settlement

Administrator will provide to Class Counsel and Defendant's Counsel all copies of

any objections mailed to the Settlement Administrator.

12.7 Any Class Member who fails to submit a timely Objection pursuant to this Section

and as detailed in the Mail Notice shall have waived any right to object to the

Settlement Agreement and shall not be permitted to object to this Settlement

18

Agreement at the Final Approval Hearing and shall be foreclosed from seeking any review of this Settlement Agreement by appeal or other means.

12.8 Any Class Member who objects may appear at the Final Approval Hearing, either in person or through an attorney hired at the Class Member's own expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the Settlement. A Class Member intending to make an appearance at the Final Approval Hearing must: (i) file a notice of intention to appear with the Court no later than twenty (21) days prior to the Final Approval Hearing, or as the Court may otherwise direct; and (ii) serve a copy of such notice of intention to appear on all counsel for all Parties. The notice of intention to appear must include copies of any papers, exhibits, or other evidence that the objector and/or the objector's counsel will present to the hearing. Failure to comply with the provisions of this Section shall waive and forfeit all right to appear separately and/or to object, and shall bind any such Class Member who fails to comply with the provisions of this Section to all the terms of this Agreement, and by all proceedings, orders, and judgments in the litigation.

12.9 The Parties agree that, subject to Court approval, any Settlement Class Member who does not file a timely written objection to the settlement shall be foreclosed from seeking review of the Settlement by appeal or otherwise.

12.10 If ten percent (10%) or more of the Class Members properly opt-out of this Settlement, Defendant, at its sole discretion, may terminate this Agreement within thirty (30) calendar days after the Settlement Administrator has provided the Parties with final information regarding the number and percentage of Class Members opting out of the Settlement. If Defendant elects to terminate the Agreement, it shall

19

do so by written notice to Class Counsel and the Settlement Administrator.  In the event that Defendant elects to terminate the Agreement, it shall bear the full cost of administration of the Settlement to date, including, but not limited to, all costs associated with the dissemination of notice, processing of claims and establishment of a Settlement Fund.

## 13   FINAL APPROVAL ORDER AND JUDGMENT

13.1   Final Approval.  The Preliminary Approval Order will set a date for a Final Approval Hearing, at which Plaintiff and Defendant will request that the Court enter the Final Approval Order finally approving the settlement in the form attached hereto as Exhibit 1, which shall specifically include provisions that:

    (A)    Finally approve the Settlement as fair, reasonable and adequate to the class;

    (B)    Find that the Class Notice as given was the best notice practicable under the circumstances, is due and sufficient notice to the Class, and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23;

    (C)    Find that the Class Members have been adequately represented by Plaintiff and Class Counsel;

    (D)    Approve the plan of distribution for the Settlement Fund and any interest accrued thereon;

    (E)    Confirm that Plaintiff and the Class Members (except those who properly excluded themselves from the Settlement Class) have released all

20

Released Claims that are contemplated under this Agreement and are permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the Released Claims that are contemplated under this Agreement against the Released Parties;

(F)     Dismiss on the merits and with prejudice all claims of the Class Members (except those who properly excluded themselves from the Settlement Class) asserted against Defendant, as well as the Action, without costs to any party, except as provided in this Agreement; and

(G)     Retain jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Settlement for 180 days after entry of the Final Approval Order.

## 14   FINAL JUDGMENT

14.1 The Judgment entered at the Final Approval Hearing shall be deemed final:

(A)     Thirty (30) days after entry of the Final Judgment approving the Settlement if no document is filed within the time seeking appeal, review or rehearing of the judgment; or

(B)     If any such document is filed, then five (5) days after the date upon which all appellate and/or other proceedings resulting from such document have been finally terminated in such a manner as to permit the judgment to take effect.

## 15   DISMISSAL AND NO ADMISSIONS

15.1    Dismissal.  Upon entry of the Final Approval Order, the Action shall be dismissed with prejudice as to Plaintiff and the Class Members, except as to those Class

21

Members who properly excluded themselves from the Settlement Class via the Opt-Out Request.

15.2    No Admission Under Federal Rule of Evidence 408.  Pursuant to Federal Rule of Evidence 408 and any similar provisions under the laws of any state, neither this Agreement nor any related documents filed or created in connection with this Agreement shall be admissible in evidence in any proceeding, except as may be necessary to approve, interpret, or enforce this Agreement.

16    RELEASE OF CLAIMS

16.1    Upon the Effective Date, Plaintiff grants the following release: Plaintiff and each Class Member (other than those persons who have timely and properly filed an Opt-Out request) releases and discharges Defendant, as well as their respective predecessors, successors, assigns, affiliates, subsidiaries, holding companies, divisions, insurers, officers, directors, shareholders, members, managers, employees, officials, subcontractors, and trustees (in such capacities as they relate to the actions that gave rise to the claims asserted in the Action), as well as The Sunset Homes Association Inc. to the extent any such liability or allegations derive in whole or part from the claims made against Defendant in the Complaint in the Action (collectively, "Released Parties"), from any and all claims, actions, causes of action, suits, counterclaims, cross-claims, third-party claims, contentions, allegations, assertions of wrongdoing, demands for any and all debts, obligations, liabilities, damages (whether actual, compensatory, treble, punitive, exemplary, statutory, or otherwise), attorneys' fees, costs, expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal, or statutory

22

relief, any other benefits, or any penalties of any type whatsoever, whether known or unknown, suspected or unsuspected, contingent or noncontingent, or discovered or undiscovered, that arise out of, relate to, or in connection with the debt collection letters that are the subject of this Action.

17  TERMINATION OF AGREEMENT

17.1  Either Side May Terminate the Agreement.  Plaintiff and Defendant shall each have the right to unilaterally terminate this Agreement by providing written notice of her or its election to do so ("Termination Notice") to all other Parties within ten (10) calendar days of any of the following occurrences:

(A)  The Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Agreement;

(B)  An appellate court reverses the Final Approval Order, and the Agreement is not reinstated without material change by the Court on remand; or

(C)  The Effective Date does not occur.

17.3  Revert to Status Quo.  If Plaintiff or Defendant terminate this Agreement as provided herein, the Agreement shall be of no force and effect and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if this Agreement had never been executed, and any orders entered by the Court in connection with this Agreement shall be vacated.

18  INAPPLICABLE TO VALIDITY OF DEBTS/OBLIGATIONS

18.1  This Agreement has no affect on any debt whatsoever.  The Parties understand and agree that this Agreement and any terms herein shall not affect in any regard any debt or obligation owed or not owed, if any, by Plaintiff or Class Members to

23

any home owner associations. This Agreement does not operate to substantiate, create, affirm, waive, extinguish, terminate, reduce, or affect any debt or obligation owed or not owed by Plaintiff or any Class Member, and shall not impair or limit any right or cause of action or right to enforce or otherwise collect any underlying debt or amount owed to any home owner associations, to the extent such right exist. The Settlement and any and all payments to Class Members that may arise from the settlement shall in no way re-trigger/re-activate the statute of limitations for any alleged debts of Class Members may owe to in regards to any home owner associations.

19 TAXES

19.1 Taxes Paid By Administrator. All taxes arising in connection with income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Defendant or any of the other Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes shall be paid by the Settlement Administrator from the Settlement Fund.

19.5 Responsibility for Taxes on Distribution. Any person or entity that receives a distribution from the Settlement Fund shall be solely responsible for any taxes or tax-related expenses owed or incurred by that person or entity by reason of that distribution. Such taxes and tax-related expenses shall not be paid by Defendant.

24

20  MISCELLANEOUS

    20.1    Governing Law. This Agreement shall be governed by the laws of the State of Wisconsin. The Parties acknowledge and agree that action brought by either Party to enforce any term of this Agreement are subject to jurisdiction in the United States District Court for the Eastern District of Wisconsin.

    20.2    No Construction Against Drafter. This Agreement was drafted jointly by the Parties and in construing and interpreting this Agreement, no provision of the Agreement shall be construed or interpreted against any Party based upon the contention that this Agreement or a portion of it was purportedly drafted or prepared by that Party.

    20.3    Entire Agreement. This Agreement and exhibits hereto constitute the entire agreement between the Parties and supersedes all prior understandings, agreements, or writings regarding the subject matter of this Agreement. No representations, warranties, or inducements have been made to any of the Parties, other than those representations, warranties, and covenants contained in this Agreement. This Agreement may be amended or modified only by a written instrument signed by all Parties or their successors in interest or their duly authorized representatives and approved by the Court. The provisions of the Agreement may be waived only in a writing executed by the Parties. The waiver by one party of any breach of this Agreement by any other party shall not be deemed a waiver, by that party or by any other party, of any other prior or subsequent breach of this Agreement.

25

20.4    Authority.  Each person executing this Agreement on behalf of any of the Parties hereto represents that such person has the authority to execute this Agreement.

20.5    No Assignment.  No party to this Agreement has assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, or cause or causes of action disposed of by this Agreement.

20.6    Receipt of Advice of Counsel.  Each Party acknowledges, agrees and specifically warrants that he, she or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering this Agreement and the Releases, the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.  Each Party to this Agreement warrants that he, she, or it is acting upon his, her or its independent judgment and upon the advice of his, her, or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations expressly made in this Agreement.

20.7    Agreement Binding on Successors in Interest.  This Agreement is binding on and shall inure to the benefit of the respective heirs, successors and assigns of the Parties.

20.8    Execution in Counterparts.  The Parties may execute this Agreement in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

26

20.9   Notices.  Unless stated otherwise herein, any notice required or provided for under this Agreement shall be in writing and may be sent by electronic mail, fax, regular mail or FedEx, postage prepaid, as follows:

**As to Plaintiff and the Class:**
Abbas Kazerounian, Esq.
Mona Amini, Esq.
Gustavo Ponce, Esq.
KAZEROUNI LAW GROUP, APC
245 Fischer Ave., Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
E-mail: gustavo@kazlg.com
E-mail: mona@kazlg.com

Matthew McKenna, Esq.
SHIELD LAW, LLC
237 South St. Unit 110
Waukesha, WI 53186
Telephone: (262) 420-5953
Facsimile: (508) 588-7303

*Attorneys for Plaintiff,*
*Mahlon Oie*

**As to Defendant:**
Tomio Narita, Esq.
WOMBLE BOND DICKINSON LLP
50 California Street, Suite 2750
San Francisco, California 94111
Telephone: (415) 765-6274
Facsimile:(415) 433-5530Email: tomio.narita@wbd-us.com

Scott Hyman, Esq.
WOMBLE BOND DICKINSON LLP
400 Spectrum Center Drive
Suite 1700
Irvine, CA 92618
Telephone: (657) 266-1067
Facsimile: (714) 557-3347
Email: Scott.Hyman@wbd-us.com

27

*Attorneys for Defendant*
*Husch Blackwell LLP*

20.10   Time Periods. The time periods and dates described herein are subject to Court

approval and may be modified upon order of the Court or written stipulation of

the Parties.

20.11   Resolution of Disputes. The Parties shall cooperate in good faith in the

administration of this Settlement. Any unresolved dispute regarding the

administration of this Agreement shall be decided by the Court.

20.12   For Settlement Only. This Agreement is for settlement purposes only and is

entered into for purposes of resolving the dispute between Defendant and all

members of the Settlement Class (including Plaintiff). Neither the act of entering

into, nor any provision contained in this Agreement, nor any action taken

hereunder, shall constitute or be asserted to constitute, or be construed as, any

admission of the validity of any claim or any fact alleged in the Action or of any

wrongdoing, fault, violation of law, or liability of any kind on the part of

Defendant or any admission by Defendant of any claim or allegation made in any

action or proceeding against Defendant. Except at the election of Defendant, this

Agreement shall not be offered or be admissible in evidence against Defendant or

cited or referred to in any action or proceeding, except in an action or proceeding

brought to enforce its terms, save and except that the Settling Parties acknowledge

and agree that Defendant may introduce, report, or otherwise use this Agreement,

its terms, and/or the orders of the Court contemplated herein to urge or establish

the defense(s) of release, res judicata, collateral estoppel or other similar defense

or theory of claim preclusion or issue preclusion, or as otherwise required by law,

28

or to protect its legal rights or interests. Nothing in this Agreement shall be construed to prevent the Settling Parties' disclosure of the terms of this Agreement to their legal, tax, accounting, financial, or other professional advisors, or as may be required for governmental or regulatory reporting purposes, or in order to make full disclosure, as may be necessary, under any securities law or regulation.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed by their duly authorized representatives.

PLAINTIFF

Dated: 6/2/25

_____
Mahlon Oie

DEFENDANT

Dated: 6/3/2025

_____
Husch Blackwell LLP
By: Timothy H. Posnanski
Its: Associate General Counsel

APPROVED AS TO FORM:

KAZEROUNI LAW GROUP, APC

Dated: 6/2/2025

_____
Abbas Kazerounian, Esq.
Mona Amini, Esq.
Gustavo Ponce, Esq.
*Counsel for Plaintiff and the Class*

WOMBLE BOND DICKINSON (US) LLP

Dated: 6/3/2025

_____
Tomio Narita, Esq.
Scott Hyman, Esq.
*Counsel for Defendant*

29

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MAHLON OIE, individually and on
behalf of all others similarly situated,

          Plaintiff,

   v.

HUSCH BLACKWELL LLP,

          Defendant.

Civil Action No. 2:24-cv-00672-LA

## [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

On _____, 2025, Plaintiff Mahlon Oie ("Plaintiff") and Defendant Husch Blackwell LLP ("Defendant") (collectively "the Parties") entered into a Class Action Settlement Agreement (hereinafter referred to as the "Agreement," "Settlement Agreement" or "SA"), which is subject to review under Fed. R. Civ. P. 23.

On _____, 2025, Plaintiff filed a Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class (hereinafter referred to as the "Preliminary Approval Motion") in the above-captioned action (the "Action"). The Preliminary Approval Motion was unopposed by Defendant.

On _____, 2025, upon consideration of the Agreement, Preliminary Approval Motion, and the record in this Action, the Court entered an Order of Preliminary Approval of Class Action Settlement (hereinafter referred to as the "Preliminary Approval Order").

On _____, 2025, Plaintiff filed a Motion for Final Approval of Class Action Settlement (hereinafter referred to as the "Final Approval Motion"). In the Final Approval Motion, Plaintiff requested, *inter alia*, final certification of the settlement class under Fed. R.

Civ. P. 23(b)(3) and final approval of the proposed Settlement.

On _____, 2025, the Court held a Final Approval Hearing pursuant to Fed. R. Civ. P. 23 to determine whether the Action satisfies the applicable prerequisites for class action treatment and whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interests of the Class Members and should be approved by the Court.

The Court has read and considered the Agreement, Final Approval Motion and the record. All capitalized terms used herein have the meanings defined herein and/or in the Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. **JURISDICTION:** The Court has jurisdiction over the subject matter of the Action and over all settling parties hereto. All capitalized terms used herein have the meanings defined herein and/or in the Settlement Agreement.

2. **SETTLEMENT CLASS MEMBERS:** Pursuant to Fed. R. Civ. P. 23(b)(3), the Action is hereby finally certified, for settlement purposes only, as a class action on behalf of the following Class members:

    All individuals who were sent an initial written communication between

    by Defendant in an attempt to recover sums due between May 30, 2023,

    and May 30, 2024.

3. **CLASS REPRESENTATIVE AND CLASS COUNSEL APPOINTMENT:** Pursuant to Fed. R. Civ. P. 23, Plaintiff Mahlon Oie is the Class Representative; and Plaintiff's counsel Abbas Kazerounian, Mona Amini, Gustavo Ponce, of Kazerouni Law Group, APC, and Matthew McKenna of Shield Law, LLC, are certified as Class Counsel.

2

4. **NOTICE AND CLAIMS PROCESS:** Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Simpluris, Inc., has complied with the approved notice process as confirmed in its declaration filed with the Court. The form and method for notifying the Class Members of the Settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order and satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, and constituted the best notice practicable under the circumstances. The Court finds that the notice process was designed to advise the Class Members of their rights. Further, the Court finds that the Settlement is finally approved, and the claim process set forth in the Settlement Agreement was followed and that the process was the best practicable procedure under the circumstances.

5. **FINAL CLASS CERTIFICATION:** The Court finds that the Action satisfies the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23, for settlement purposes under Fed. R. Civ. P. 23(b)(3). The Court finds that the Settlement of the Action, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interests of the Class Members, especially in light of the benefits to the Class Members, the strength of Plaintiff's case, the complexity, expense and probable duration of further litigation, the risk and delay inherent in possible appeals, and the risk of collecting any judgment obtained on behalf of the class.

6. **SETTLEMENT TERMS:** The Settlement Agreement, which has been filed with the Court and shall be deemed incorporated herein, and the proposed Settlement are finally approved and shall be consummated in accordance with the terms and provisions thereof,

except as amended by any order issued by this Court. The material terms of the Settlement Agreement include, but are not limited to, the following:

- The Settlement Administrator shall pay each of the _____ Class Members, who did not timely submit an Opt-Out request excluding themselves from the Settlement, a Settlement Award in the sum of $_____ from the Settlement Fund established by Defendant;

- The Settlement Administrator shall pay from the Settlement Fund the sum of $_____ to the named Plaintiff or Class Representative, payable through Class Counsel, as an Incentive Award for bringing and participating in this Action;

- The Settlement Administrator shall be paid the sum of $_____ by Defendant for its costs and fees incurred for the cost of notice and settlement administration and any amounts advanced by Defendant for those purposes shall be credited and refunded to them from the Settlement Fund; and

- The Settlement Administrator shall pay to Class Counsel the sum of $_____ as attorneys' fees and costs incurred in litigating this Action, in the manner specified in the Agreement.

- This Agreement has no affect on any debt whatsoever. The Parties understand and agree that this Agreement and any terms herein shall not affect in any regard any debt or obligation owed or not owed, if any, by Plaintiff or Class Members to any home owner associations. This Agreement does not operate to substantiate, create, affirm, waive, extinguish, terminate, reduce, or affect any debt or obligation owed or not owed by Plaintiff or any Class Member, and shall not impair or limit any right or cause of action or right to enforce or otherwise collect any underlying debt

4

or amount owed to any home owner associations, to the extent such right exist. The Agreement and any and all payments to Class Members that may arise from the Agreement shall in no way re-trigger/re-activate the statute of limitations for any alleged debts of Class Members may owe to in regards to any home owner associations.

7. **EXCLUSIONS AND OBJECTIONS:** A total of ____ exclusions were received. Those persons requesting exclusion are named on Exhibit A to this Order. The Court hereby excludes these individuals from the Class and Settlement.

8. The Class Members were given an opportunity to object to the settlement. Only _____ Settlement Class Members filed objections. After consideration of each of the objections, the Court hereby overrules such objections.

9. This Order is binding on all Class Members, except those individuals named on Exhibit A, who validly and timely excluded themselves from the Class.

10. **RELEASE OF CLAIMS AND DISMISSAL OF ACTION:** The Class Representative, Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims against any of the Released Parties, as set forth in the Agreement. Pursuant to the Release contained in the Agreement, the terms of which are incorporated herein, the Released Claims are compromised, discharged, and dismissed with prejudice by virtue of these proceedings and this order.

11. The Action is hereby dismissed with prejudice in all respects.

12. This order is not, and shall not be construed as, an admission by Defendant of any liability or wrongdoing in this or in any other proceeding.

5

13. Without affecting the finality of this Final Judgment and Order of Dismissal with Prejudice, the Court hereby retains continuing and exclusive jurisdiction over the Parties and all matters relating to the Action and/or Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this order.

IT IS SO ORDERED.

Dated: _____        _____
                                      HON. LYNN ADELMAN
                                      U.S. DISTRICT JUDGE

# EXHIBIT 2

*MAHLON OIE V. HUSCH BLACKWELL LLP, Case No. 2:24-cv-00672-LA*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

<u>NOTICE OF PENDENCY OF PROPOSED SETTLEMENT OF CLASS ACTION</u>

IF YOU RECEIVED AN INITIAL WRITTEN COMMUNICATION FROM DEFENDANT HUSCH BLACKWELL LLP IN AN ATTEMPT TO RECOVER SUMS DUE BETWEEN MAY 30, 2023, AND MAY 30, 2024, YOU MAY BE ENTITLED TO BENEFITS UNDER THIS SETTLEMENT.

Please Read This Notice Carefully, As It Affects Your Legal Rights.

***The United States District Court for the Eastern District of Wisconsin authorized this notice.***

***This is not a solicitation from a lawyer.***

Your rights may be affected by the proposed settlement ("Settlement") discussed in this court-authorized notice ("Notice"). This Notice is to inform you of the conditional certification of a settlement class, the nature of the claims at issue, your right to participate in, or exclude yourself from the settlement class, and the effect of exercising your various options.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** <br><br> **(PARTICIPATE IN THE SETTLEMENT)** | If you agree with the proposed Settlement, you need not do anything to participate in the Settlement. |
| **EXCLUDE YOURSELF** | You will not be entitled to participate in the Settlement if you choose this option. |
| **OBJECT OR COMMENT** | Write to the Court about why you do, or do not, like the Settlement. You must remain in the class to comment in support of or in opposition to the Settlement. |
| **ATTEND THE HEARING** | Ask to speak to the Court about the fairness of the Settlement. |

| 1. | Why did the Court authorize issuance of this notice? |
|---|---|

This Notice is given to inform you that: (1) a class action lawsuit is pending in the United States District Court for the Eastern District of Wisconsin entitled, *MAHLON OIE V. HUSCH BLACKWELL LLP, Case No. 2:24-cv-00672-LA*; (2) you may be a Settlement Class Member; (3) the parties have proposed to settle the Action; (4) the proposed Settlement may affect your legal rights; and (5) you have a number of options.

| 2. | What is this Litigation about? |
|---|---|

Plaintiff MAHLON OIE ("Plaintiff") alleges that Defendant HUSCH BLACKWELL LLP ("Defendant") violated the federal Fair Debt Collection Practices Act ("FDCPA").

Defendant denies Plaintiff's allegations and further denies that they violated any laws, or that they are liable to Plaintiff and/or any Settlement Class Member for violations of the FDCPA. Accordingly, neither this Notice nor the proposed Settlement reflects any admission by Defendant that their initial communications sent in attempt to recover sums due violated any law or the rights of any recipient of such notices.

| 3. | How do I know if I am part of the Settlement Class? |
|---|---|

The Court has conditionally certified the following "Settlement Class":

"Class" means all individuals who were sent an initial written communication between May 30, 2023, and May 30, 2024 by Defendant in an attempt to recover sums due. Excluded from the Class are the Judge to whom the Action is assigned any member of the Court's staff and immediate family, all persons who have been adjudicated

bankrupt subsequent to receiving an alleged initial written communication, and all persons who are validly excluded from the Class. Defendant estimates that there are approximately 303 individuals in the Class.

| 4. | Why did the parties agree to a Settlement? |
|---|---|

The Court did not decide in favor of the Plaintiff or Defendant. Instead, both sides agreed to a Settlement that they believe is a fair, reasonable, and adequate compromise of their respective positions. The parties reached this agreement only after investigation of the claims alleged and the relevant facts, and independent consideration of the risks and benefits of settlement through extensive arms-length negotiations.

Class Counsel and Plaintiff have considered the substantial benefits from the Settlement that will be given to the Class Members and balanced these benefits with the risk of prolonged litigation. They also considered the value of the immediate benefit of settlement to Class Members versus the costs and delay of litigation through trial and appeals. Even if Plaintiff was successful in these efforts, Class Members may not receive any benefits for years.

| 5. | What benefit does the Settlement provide? |
|---|---|

If the proposed Settlement is approved by the Court, it will provide cash payments to the Class. In return for the relief described below, Class Members release their rights to pursue any claims individually against Defendant relating to the claims at issue in this Action.

The following description of the settlement benefits is qualified in its entirety by reference to the Settlement Agreement, a copy of which is on file with the Court.

The parties have agreed to a settlement, which is summarized as follows:

a) <u>Settlement Awards to the Settlement Class Members</u>. All Class Members who do not submit an Opt-Out Request excluding themselves from the Class shall receive $30.00 as a Settlement Award.

b) <u>Incentive Award</u>. The named Plaintiff, or Class Representative, shall receive an additional sum of $2,500.00, which represents an Incentive Award for the time and effort she has personally invested in this Action as the Class Representative.

c) <u>Costs of Administration.</u> The Defendant will pay the costs of class administration.

| 6. | How do I Receive My Settlement Award? |
|---|---|

To receive the Settlement Award under the Settlement, you do not need to do anything. If you do not exclude yourself from the Settlement, you will receive your Settlement Award in the mail after the Court grants Final Approval to the Settlement.

| 7. | What claims do I release if I do not opt out of this settlement? |
|---|---|

Unless you exclude yourself from the Class, approval of this Settlement will result in a release by you of all claims against Defendant arising from, related to, or connected with the Action, the FDCPA or any collection notices or communications, directed by Defendant to the Class Members during the Class Period. This Settlement has no affect on any debt owed by any member of the class whatsoever, and nothing in the settlement shall otherwise limit or eliminate any member of the class' obligation(s) on any debt.

| 8. | Do I have a lawyer in the case? |
|---|---|

The Court has appointed the following law firm as Class Counsel: Abbas Kazerounian, Mona Amini, and Gustavo Ponce, of the law firm Kazerouni Law Group, APC, located 245 Fischer Ave., Unit D1, Costa Mesa, CA 92626, and Matthew McKenna of the law firm Shield Law, LLC located at 237 South St. Unit 110, Waukesha, WI 53186.

| 9. | How will the lawyers for the Settlement Class be paid? |
|---|---|

If the Court approves the Settlement, the Court also will determine what amount of attorneys' fees, costs and all other expenses should be paid to Class Counsel for their representation of Plaintiff and the Class in this Action. Payment of attorneys' fees and litigation costs to Class Counsel will not reduce any benefit available to you as part of the Settlement, and will be paid separately by Defendant, separate from the Settlement Fund. The parties have

agreed that Class Counsel shall be entitled to reasonable fees and costs. The parties further understand that the amount of attorneys' fees and costs will be no greater than $90,000.00. This amount will be paid by Defendant separate from the Settlement Fund created to provide payment of the Settlement Awards to the Settlement Class Members and the Incentive Award in the amount of $2,500.00 which the parties request to be paid to the Plaintiff for her participation as the Class Representative in this Action.

## 10. What happens if I do nothing after receiving this Notice?

If you do nothing, and the Court approves the settlement, you will be bound by the terms of the Settlement and will be unable to pursue individual claims against Defendant concerning the facts at issue in this Action. If the Settlement is approved, and you do not opt-out of the settlement class, you will receive a cash benefit under the Settlement.

## 11. What does it mean to request exclusion from the Settlement Class?

If you are a member of the Class and will be bound by the Settlement if the Court approves it unless you exclude yourself from the Class (also known as "opting out"). Being "bound by the settlement" means that you will be precluded from bringing, or participating as a claimant in, a similar lawsuit against Defendant. Persons who exclude themselves from the Class by submitting a valid written Opt-Out Request will not be bound by the terms of the Settlement and will not be eligible to receive any benefits from the Settlement, but they will retain the right to sue Defendant separately at their own cost.

You cannot exclude yourself from the Class and the Settlement if you wish to object to the settlement and/or appear before the Court during the Final Approval Hearing (see paragraphs 13 and 14), as you need to be a Class Member affected by the Settlement to object or appear.

## 12. How do I request exclusion from the Settlement?

You may exclude yourself from the Class provided that your request is made in writing and postmarked before _____, 2025, which is a date 75 days after the date of the Preliminary Approval Order. Your written Opt-Out Requests must: (i) be signed by the person in the Class who is requesting exclusion; (ii) include the full name, phone number, email, current address of the person in the Class requesting exclusion; (iii) claim identification number included in the Notice, and (iv) include the following statement: "I/we request to be excluded from the settlement in the Oie Husch Blackwell FDCPA class action, ." No request for exclusion/opt out will be valid unless all of the information described above is included. Your written request to exclude yourself from the Settlement must be sent to the Settlement Administrator [insert address] and Class Counsel, Abbas Kazerounian, Mona Amini, and Gustavo Ponce, at Kazerouni Law Group, APC, 245 Fischer Ave., Unit D1, Costa Mesa, California 92626.

You will be excluded from the settlement only if your request is *postmarked* on or before _____ (75 days after the date of the Preliminary Approval Order), and includes the required information. The date of the postmark on the Opt-Out Request shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.

## 13. What if I object to the Settlement?

If you are a Class Member, you can object or comment on the Settlement. To object to the settlement, you must provide make an objection in writing and file it with the Court by the Opt-Out and Objection Deadline, _____ (75 days after the date of the Preliminary Approval Order). An objection must: (A) Attach documents establishing, or provide information sufficient to allow the Parties to confirm, that the objector is a Class Member, including providing the Claim ID, full name, address, and whether he or she intends to appear at the Final Approval Hearing on his or her own behalf or through counsel; (B) Include a statement of such Class Member's specific objections; and (C) State the grounds for objection and attach any documents supporting the objection.

Any Class Member who objects may appear at the Final Approval Hearing, either in person or through an attorney hired at the Class Member's own expense, to object to the fairness, reasonableness, or adequacy of this Agreement

or the Settlement. A Class Member intending to make an appearance at the Final Approval Hearing must: (i) file a notice of intention to appear with the Court no later than twenty (21) days prior to the Final Approval Hearing, or as the Court may otherwise direct; and (ii) serve a copy of such notice of intention to appear on all counsel for all Parties.

You must notify the Court, Class Counsel, and Defendant's Counsel of your objection postmarked by _____, 2025, and your notice to of intention to appear regarding the objection before _____, 2025 twenty-one (21) days prior to the Final Approval Hearing and mail your objection to *each* of the following:

**Class Counsel:**
Abbas Kazerounian, Esq.
Mona Amini, Esq.
Gustavo Ponce, Esq.
KAZEROUNI LAW GROUP, APC
245 Fischer Ave., Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
E-mail: gustavo@kazlg.com
E-mail: mona@kazlg.com

Matthew McKenna, Esq.
SHIELD LAW, LLC
237 South St. Unit 110
Waukesha, WI 53186
Telephone: (262) 420-5953
Facsimile: (508) 588-7303

**Defendant's Counsel:**
Tomio Narita, Esq.
WOMBLE BOND DICKINSON LLP
50 California Street, Suite 2750
San Francisco, California 94111
Telephone: (415) 765-6274
Facsimile: (415) 433-5530
Email: tomio.narita@wbd-us.com

Scott Hyman, Esq.
WOMBLE BOND DICKINSON LLP
400 Spectrum Center Drive
Suite 1700
Irvine, CA 92618
Telephone: (657) 266-1067
Facsimile: (714) 557-3347
Email: Scott.Hyman@wbd-us.com

If your objections do not meet all of the requirements set forth in this section, they may be deemed invalid and may be overruled.

| 14. | When and where will the Court determine whether to approve the Settlement? |
|---|---|

The Court has scheduled a Final Approval Hearing at _____ on _____, 2025 in Courtroom ___ of the United States District Court for the Eastern District of Wisconsin located at 517 East Wisconsin Avenue Rm 362

Milwaukee, WI 53202. This hearing may be continued or rescheduled by the Court without further notice. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and will consider Class Counsel's request for attorneys' fees and expenses. The Court also will consider any objections. The Court may decide these issues at the Final Approval Hearing or take them under consideration without oral argument.

| 15. | Do I have to come to the final approval hearing? |
|-----|---------------------------------------------------|

No. You are not required to attend to the hearing but you are welcome to come at your own expense if you wish.

Class Members who object to the Settlement do not need to attend the Final Approval Hearing for their objections to be considered. If you wish to appear either personally or through your own personal attorney at the Final Approval Hearing, you must send both a timely objection and a notice of intent to appear to the Clerk of the Court at the address set forth in Section 14 above, and serve copies on Class Counsel and counsel for Defendant at the addresses set forth in Section 14 above no later than _____, 2025.

Your notice of intention to appear must include copies of any papers, exhibits, or other evidence that you or your counsel will present to the hearing. Any Class Member who does not file and serve a notice of intention to appear in accordance with these instructions may be barred from speaking at any hearing concerning this Settlement.

| 16. | How do I get more information about the Settlement? |
|-----|-----------------------------------------------------|

This Notice only summarizes the Settlement. The official terms of the Settlement are available by reviewing the public files for the United States District Court for the Eastern District of Wisconsin, by visiting the Settlement Website, or by sending a self-addressed, stamped envelope to the Settlement Administrator [insert address], or by contacting Class Counsel. Please do not contact the Court with questions regarding the Settlement.

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

MAHLON OIE, individually and on
behalf of all others similarly situated,

        Plaintiff,

  v.

HUSCH BLACKWELL LLP,

        Defendant.

Civil Action No. 2:24-cv-00672-LA

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

On _____, 2025, Plaintiff Mahlon Oie ("Plaintiff") and Defendant Husch Blackwell LLP ("Defendant") (collectively "the Parties") entered into a Class Action Settlement Agreement (hereinafter referred to as the "Agreement," "Settlement Agreement" or "SA"), which is subject to review under Fed. R. Civ. P. 23.

On _____, 2025, Plaintiff filed the Settlement Agreement, along with the Plaintiff's Preliminary Approval Motion. The Preliminary Approval Motion was unopposed by Defendants.

On _____, 2025, upon consideration of the Agreement, Plaintiff's Preliminary Approval Motion, and the record in this Action, **NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. **JURISDICTION:** The Court has jurisdiction over the subject matter of the Action and over all settling parties hereto. All capitalized terms used herein have the meanings defined herein and/or in the Settlement Agreement.

2. **PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT:** The Court preliminarily finds that the Settlement of the Action, on the terms and conditions set forth in the Settlement Agreement and the exhibits thereto, is in all respects fundamentally fair, reasonable, adequate and in the best interests of the Class Members, taking into

consideration the benefits to Class Members; the strength and weaknesses of Plaintiff's case; the complexity, expense and probable duration of further litigation; and the risk and delay inherent in possible appeals. The Court finds that notice of the Settlement should be given to the approximately the Class and hearing shall be held on final approval of the Settlement.

3. **SETTLEMENT CLASS MEMBERS:** Pursuant to Fed. R. Civ. P. 23(b)(3), the Action is hereby preliminarily certified, for settlement purposes only, as a class action on behalf of the following Class members:

> All individuals who were sent an initial written communication between by Defendant in an attempt to recover sums due between May 30, 2023, and May 30, 2024.

4. **CLASS CERTIFICATION:** The Court preliminarily finds that the Action satisfies the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23, for purposes of settlement only.

5. **CLASS REPRESENTATIVE AND CLASS COUNSEL:** For purposes of preliminary approval, the Court appoints Plaintiff Mahlon Oie as the Class Representative; and Plaintiff's counsel Abbas Kazerounian, Mona Amini, Gustavo Ponce, of Kazerouni Law Group, APC, and Matthew McKenna of Shield Law, LLC, are appointed as Class Counsel.

6. **CLASS NOTICE AND SETTLEMENT ADMINISTRATOR:** The Court approves the form and method of Class Notice set forth in the Settlement Agreement. The Court finds that the form and method of notice set forth in the Settlement Agreement satisfies the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, and constitutes the best practicable procedure under the circumstances. The Court approves the proposed Mail Notice attached to the Settlement Agreement as **Exhibit 2**. The Court preliminarily

appoints Simpluris as the Settlement Administrator and they are directed to disseminate notice as set forth in the Settlement Agreement.

7. **SETTLEMENT AND CLAIMS PROCESS:** The Court preliminarily approves the Settlement as fair, reasonable and adequate for members of the Class. The Court preliminarily approves the process set forth in the Settlement Agreement for reviewing, approving and paying Settlement Award payments from the Settlement Fund on a pro rata basis.

8. **EXCLUSIONS:** Any Class Member who desires to be excluded from the Settlement must send a written request to the Settlement Administrator at the address designated in the Class Notice, to be postmarked no later than the Opt-Out and Objection Deadline, which is 75 days after the date of the entry of the Preliminary Approval Order. Opt-Out Requests must: (i) be signed by the person in the Class who is requesting exclusion; (ii) include the full name, phone number, email, current address of the person in the Class requesting exclusion; (iii) claim identification number included in the Notice, and (iv) include the following statement: "I/we request to be excluded from the settlement in the Oie Husch Blackwell FDCPA class action." The Settlement Administrator's address shall be provided in the Class Notice mailed to the Class Members. The Settlement Administrator shall provide a list of all Opt-Out Requests to Class Counsel and Defendants within fourteen (14) days after the Opt-Out and Objection deadline. A list of the Class Members excluded from the Settlement will be filed with the Motion for Final Approval of the Class Action Settlement. Any Class Member who submits a valid and timely Opt-Out Request shall not be a member of the Settlement Class, and shall not be bound by the Settlement Agreement or Settlement.

9. **OBJECTIONS:** Any Settlement Class Member who intends to object to the fairness of the Settlement must file a written objection with the Clerk of Court, on or before the Opt-Out and Objection Deadline, which is seventy-five (75) days from the post-marked date of the Class Notice. Further, any such Class Member must, within the same time period,

mail a copy of the written objection to Class Counsel and Defendants' Counsel, whose addresses shall be set forth in the Notice advising the Class Members regarding objections. To be considered, written objection must be signed by the Class Member and (A) attach documents establishing, or provide information sufficient to allow the Parties to confirm, that the objector is a Class Member, including providing the Claim ID, full name, address, and whether he or she intends to appear at the fairness hearing on his or her own behalf or through counsel; (B) Include a statement of such Class Member's specific objections; and (C) State the grounds for objection and attach any documents supporting the objection. Any Settlement Class Member who does not file a valid and timely objection to the Settlement shall be barred from seeking review of the Settlement by appeal or otherwise.

10. **<u>FINAL APPROVAL HEARING</u>:** The Court shall conduct a hearing (hereinafter the "Final Approval Hearing") on _____, 2025 at _____ am/pm. The Final Approval Hearing may be rescheduled or continued by the Court or upon stipulation of the Parties. At the hearing, the Court will consider the following issues:

- Whether this Action satisfies the applicable prerequisites for class action treatment for settlement purposes under Fed. R. Civ. P 23;

- Whether the proposed Settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be approved by the Court;

- Whether the Final Judgment, as provided under the Settlement Agreement, should be entered, dismissing the Action with prejudice and releasing the Released Claims against the Released Parties; and

- Any such other issues as the Court deems appropriate.

11. Attendance at the Final Approval Hearing is not necessary. Class Members need not appear at the hearing or take any other action to indicate their approval of the proposed class action settlement. However, Class Members wishing to be heard are required to

indicate in their written objection whether they intend to appear at the Final Approval Hearing.

12. If the Settlement Agreement is not finally approved for any reason, then this order shall be vacated, the Settlement Agreement shall have no force and effect, and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if the Settlement Agreement had never been executed and this order never entered.

13. The Court retains continuing and exclusive jurisdiction over the action to consider all further matters arising out of or connected with the settlement, including the administration and enforcement of the Settlement Agreement.


IT IS SO ORDERED.

Dated: _____      _____
                                      HON. LYNN ADELMAN
                                      U.S. DISTRICT JUDGE