# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MAHLON OIE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>HUSCH BLACKWELL LLP,<br><br>    Defendant. | Case No.: 2:24-cv-00672-LA |

## PLAINTIFF'S UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

### I. INTRODUCTION

Plaintiff Mahlon Oie ("Plaintiff" or "Class Representative") hereby submits Plaintiff's Motion for an award of reasonable attorneys' fees and costs of litigation pursuant to the Settlement Agreement ("Agr." or "Agreement")[1] and the Court's Preliminary Approval Order in this Action.

As a result of the Settlement, each of the 303 Settlement Class Members will receive $30.00 from the Settlement Fund. Agr. § 5.1. The Settlement further provides that Defendant will pay the Settlement Administrator's fees and costs, Class Counsel's attorney's fees and costs, and an Incentive Award for the Class Representative in the amount of $2,500.00, separately outside the Settlement Fund.  Agr. § 6.

Given the work done by Class Counsel to achieve the Class Action Settlement in this action, Plaintiff respectfully requests that the Court approve the unopposed request for an award of attorneys' fees and costs in the amount of $90,000.00. Class Counsel asserts that Plaintiff's attorney's fees and costs are wholly reasonable and justified in light of the excellent Settlement

---

[1] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Settlement Agreement.

obtained for the Settlement Class. Class Counsel respectfully submits the Court that the requested fee award is fair, reasonable, consistent with Seventh Circuit law, and appropriate given the attorneys' fees awarded in similar cases.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This consumer class action arises form Plaintiff's allegations that Defendant unlawfully and attempted to collect alleged debts due from Plaintiff and other similarly situated consumers in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (FDCPA). Plaintiff's First Amended Complaint (ECF No. 25) (the "FAC") alleges, that Defendant, a company located in Milwaukee, Wisconsin which regularly engages in debt collection violated sections 1692e, 1692f and 1692g of the FDCPA by sending Plaintiff and similarly situated Class members false or misleading collection communications which represented that they had less than thirty (30) days to dispute the alleged debt or to request validation of the alleged debt from Defendant. Defendant denies the alleged wrongdoing and has asserted defenses to Plaintiff's FAC.

After extensive investigation and evaluation of the facts and law concerning the claims asserted in the Action and good faith and arm's length settlement negotiations, the parties arrived at a settlement and compromise of disputed claims. Subsequently, on August 13, 2025, the parties' proposed Settlement Agreement was submitted to the Court along with Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. Thereafter, the Court issued an Order Granting Preliminary approval on August 25, 2025. The Court's Order Granting Preliminarily Approval certified the Settlement Class for settlement purposes, appointed Plaintiff's counsel, Abbas Kazerounian, Mona Amini, and Gustavo Ponce of Kazerouni Law Group, APC, and Matthew McKenna of Schield Law LLC as Class Counsel, and appointed the named Plaintiff, Mahlon Oie, as the Class Representative in this Action. *Id.*  In addition, the Order approved of the

2

parties' proposed Notice procedure, directed distribution of court-approved Notice to the Settlement Class Members, set the deadline for Plaintiff's instant Motion for Attorneys' Fees, Costs, and Incentive Award, and scheduled the Final Fairness and Approval Hearing for January 5, 2025, at 10:30 a.m. in Courtroom 390 of the above-captioned court before the Honorable Lynn Adelman. *Id*.

### III. LEGAL STANDARD

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are <u>authorized by law or by the parties' agreement</u>." Fed. R. Civ. P. 23. (emphasis added). The FDCPA includes a fee shifting provision which provides that reasonable attorneys' fees and costs shall be awarded to a prevailing plaintiff. Specifically, 15 U.S.C. § 1692k(a)(3) of the FDCPA states that:

> [A]ny debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person… [for] the costs of the action, together with a reasonable attorney's fee as determined by the court.

"Once a party has established that he is entitled to attorneys' fees, '[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Although there is no precise formula to calculate reasonable attorney fee, the "starting point is usually the lodestar method." *Cooper v. Retrieval-Masters Creditors Bureau, Inc.,* 42 F.4th 675, 682 (7th Cir. 2022). The court may then adjust the figure "to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public advanced by the litigation." *Id.* (citing *Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.,* 574 F.3d 852, 856 (7th Cir. 2009). It is undisputed that Plaintiff is to be paid reasonable attorneys' fees and costs for this Action under the FDCPA, and because Defendant has also agreed to do so as part of the Settlement. Agr. §§ 6.1. Class Counsel is entitled to reasonable attorneys'

fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) since Plaintiff is the prevailing party. *Id.*

For class action settlements involving a fee shifting statute such as this action, the lodestar method is the appropriate methodology to assess the reasonableness of the requested fees and costs. *See Americana Art China Co. v. Foxfire Printing & Packaging, Inc*., 743 F.3d 243, 247-48 (7th Cir. 2014) (emphasizing that courts may and often should use the lodestar method rather than a percentage-of-the-fund approach where the statutory scheme contemplates fee-shifting and the recovery is not a traditional common fund). The lodestar calculation enjoys a strong presumption of reasonableness in the Seventh Circuit. *See McNabola v. Chicago Transit Authority,* 10 F.3d 501, 518 (7th Cir. 1993); *Pickett v. Sheridan Health Care,* 664 F.3d 632, 639 (7th Cir. 2011).

Reasonableness is determined by a number of considerations, including "(1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the plaintiff's attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995); *Spellan v. Board of Educ.,* 59 F.3d 642, 645 (7th Cir. 1995). The sole question raised by the current motion is what amount is reasonable.

## A. CONGRESS INTENDED TO ENCOURAGE PRIVATE ENFORCEMENT OF THE FDCPA

As with other consumer protection statutes, a plaintiff pursing claims under the FDCPA is the "chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority." *Postow v. Oriental Bldg Ass'n,* 455 F. Supp. 781, 785 (D.D.C. 1978), aff'd in part and

rev'd in part on other grounds, 627 F.2d 1370 (D.C. Cir. 1980) (applying to the Truth in Lending

Act the description in *Christiansburgh Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978)).  Indeed,

the Seventh Circuit has held that "Congress intended that individual plaintiffs would be the

FDCPA's primary enforcers." *Markakos v. Medicredit, Inc.,* 997 F.3d 778, 784 (7th Cir. 2021).

Thus, Congress encouraged private enforcement by providing that attorney's fees must be awarded

to the successful consumer. The provision for attorney's fees encourages defendants to comply

with the law, while providing consumers an incentive and the financial ability to bring suits:

> If the 2,000 plus [TILA] suits filed each year represent even the majority of the alleged violations of the Act, the government has the option of creating a substantial bureaucracy to detect and prosecute these numerous alleged violations or to rely on the self-interest of the injured consumer to perform these tasks. The latter option is undoubtedly more cost efficient from the government's standpoint and is probably more efficient overall, assuming that consumers are in a better position to detect violations committed against them than some government agency would be. Because private litigation is as a supplement, rather than as an alternative to public enforcement of the Act, its encouragement through attorneys' fees and damages cannot help but affect a fuller compliance with the Act.

*Postow*, *supra*, 455 F. Supp. at 785-786.

Civil penalties in a statute are "to provide creditors with a meaningful incentive to comply

with the law without relying on an extensive new bureaucracy." Sen.Rep.No.93-278, p. 14.  The

incentive necessarily includes fee-shifting to ensure that plaintiffs' counsel will undertake the

enforcement actions Congress envisioned.  *Tolentino v. Friedman*, 46 F.3d 645, 651-652 (7th Cir.

1995) ("'Unlike most private tort litigants, [a plaintiff who brings an FDCPA action] seeks to

vindicate important . . . rights that cannot be valued solely in monetary terms,' *City of Riverside

v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed. 2d. 466 (1986), and Congress has determined

that the public as a whole has an interest in the vindication of the statutory rights. *Id*."); *Graziano

v. Harrison*, 950 F.2d 107, 113-14 (3d Cir. 1991) (FDCPA "mandates an award of attorney's fees

as a means of fulfilling Congress's intent that the act should be enforced by debtors acting as

private attorney generals").

### B. PUBLIC POLICY FAVORS AWARDING ATTORNEYS ACTING AS PRIVATE ATTORNEYS GENERAL THEIR ATTORNEYS' FEES AND COSTS

Federal Courts have long recognized the importance of the fee shifting provision of the FDCPA, as well as the public policies behind it. The Seventh Circuit affirmed that a separate award for costs and fees is mandatory.

> Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general.

*Tolentino v. Friedman*, 46 F.3d 645, 651-52 (7th Cir. 1995); see also, *Jerman*, 559 U.S. at 525 ("[t]he Act is enforced through…private lawsuits."); and *Schlacher v. Law Offices of Phillip J. Roche & Assocs., P.C.,* 574 F.3d 852, 856 (7th Cir. 2009) ("[p]laintiffs who prevail under the [FDCPA] are entitled to an award of costs and reasonable attorney's fees"). The United States Supreme Court and the Seventh Circuit have repeatedly reaffirmed the plaintiff's entitlement to reasonable attorneys' fees and costs.

The *Tolentino* court also noted Congress' specific intent to allow an individual Plaintiff the ability to pursue an action where the burden of costs and fees would otherwise economically preclude this type of rights enforcement. *Tolentino* at 632; citing *City of Riverside v. Rivera*, 477 U.S. 561 (1986). "Unlike most private tort litigants, a plaintiff who brings an FDCPA action seeks to vindicate important rights that cannot be valued solely in monetary terms and congress has determined that the public as a whole has an interest in the vindication of the statutory rights." *Id.*

The difficulty in private attorneys general actions, such as the FDCPA (and similar state enacted statutes), is that the potential for recovery is not clear at the time the litigation is commenced

unlike in personal injury actions.[2] Additionally, the amount in controversy is usually too small to induce an attorney to commence litigation on a percentage contingency. Accordingly, "the purpose of the statutory fee award is to benefit the plaintiff by allowing the plaintiff to obtain counsel in order to pursue redress for relatively small claims."[3] By providing the private bar with incentive to involve itself in consumer litigation through fee-shifting, the government is relieved of the costs of protecting consumers while ensuring that consumers may still avail themselves of their statutory rights. A different result would create a deterrent for the private bar to pursue an action for which Congress has so emphatically dictated the importance.[4] This sort of "chilling effect" would counter the purpose of the statute, which, when coupled with the provision awarding attorneys' fees "is to encourage consumers to file actions to vindicate their rights."[5] As a result, public policy dictates that Plaintiff's attorneys' fees and costs be paid by Defendant.

## IV.     ARGUMENT

Plaintiff's requested attorneys' fees and costs are not based on a percentage of a common fund, but are rather based on Class Counsel's lodestar. As a result, any moneys paid to Class Counsel for attorneys' fees and costs will not dilute the moneys available in the Settlement Fund to the Settlement Class Members, and the Settlement specifically provides that any award of attorney's fees, costs, and incentive award, as well as the administrative fees and costs for the Settlement Administrator, are to be paid by Defendant separate from the Settlement Fund

---

[2] *Bowers v. Transamerica Title Insurance Company*, 675 P.2d 193, 204 (Wash. 1983).

[3] *Majcher v. Laurel Motors Co.*, 287 Ill.App.3d 719, 680 N.E.2d 416 (Ill. Ct. App. 1997); *see also Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 488 (Ky. Ct. App. 1978); *Cooper v. Retrieval-Masters Creditors Bureau, Inc.,* 42 F.4th 675,687 (7th Cir. 2022) (noting the provision of reasonable attorney fees under FDCPA is "particularly important" for plaintiffs' who recovered minimal statutory damages but "incurred thousands of dollars in fees and costs").

[4] "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

[5] *Grove v. Huffman*, 262 Ill. App. 3d 531, 539, 634 N.E. 2d 1184, 1190 (1994).

7

established for monetary relief for the Settlement Class Members. Additionally, the requested attorneys' fees represent the prevailing market rate for comparable legal services, consistent with the Seventh Circuit's market-based approach to statutory fee awards. As discussed at length herein, Plaintiff is entitled to recover reasonable attorneys' fees and costs under the FDCPA as the prevailing party in this Action. Plaintiff is also entitled to recover Plaintiff's attorneys' fees and costs pursuant to the parties' Settlement Agreement. *See* Agr. § 6.1. The amount of Plaintiff and Class Counsel's request for attorneys' fees and costs is unopposed by Defendant as it does not exceed $90,000. *Id.* Therefore, Class Counsel's request for attorneys' fees and costs should be granted in its entirety the amount requested is fair and reasonable, and agreed upon by the parties in the Settlement. *Id.*

### A. THE LODESTAR METHOD SUPPORT'S CLASS COUNSEL'S REQUESTED ATTORNEY'S FEES AND COSTS

The U.S. Supreme Court has explained the calculation for an award of attorney's fees:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Hensley v. Eckerhart*, 461 U.S. 424, 433; 103 S. Ct. 1933, 1339; 76 L. Ed. 2d. 40 (1983).

Although this decision, and may others cited hereinafter, arise in the context of the Civil Rights Attorneys Fees Award Act, 42 U.S.C. § 1988, its criteria is equally applicable herein. "The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party." *Id*. 103 S. Ct. at 1939, n.7. "We have stated in the past that the fee-shifting statutes similar language is 'a strong indication that they are to be interpreted alike.'" *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754; 109 S. Ct. 2732, 2735 n.2; 105 L. Ed. 2d. 639 (1989) (quoting *Northcross v. Memphis Bd. of Education*,

412 U.S. 427, 428; 93 S. Ct. 2201, 2202 37 L. Ed. 2d. 48 (1973)). The multiplication of the reasonable number of hours expended times the reasonable hourly rate is referred to as the "lodestar." *McNabola v. Chicago Transit. Auth.,* 10 F.3d 501, 518 (7th Cir. 1993). "There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett v. Scheridan Health Care Ctr.,* 664 F.3d 632, 639 (7th Cir. 2011). Once the raw lodestar figure is determined, the Court may then adjust that figure based on a number of factors, such as (1) the results obtained; (2) whether fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of the other employment due to acceptance of the case; and (5) the experience, reputation, and ability of the attorneys. *See Spellan v. Board of Educ.,* 59 F.3d 642, 645 (7th Cir. 1995); *Rki, Inc. v. Grimes,* 233 F.Supp.2d 1018, 1020 (N.D. Ill. 2002) ("the standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case").

### 1. The Results Obtained for the Class

The "results obtained" for the class is generally considered to be the most important in determining the appropriate fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983); *Jaffee v. Radmond,* 142 F.3d 409, 413 (7th Cir. 1998); see also, Federal Judicial Center, *Manual for Complex Litigation*, § 27.71, p. 336 (4th Ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note). This factor supports the *combined* expenses and attorneys' fee request of $90,000. Class Counsel were able to successfully negotiates a settlement on behalf of the Settlement Class of approximately 303 person (Arg. §§ 5.1) "who were sent an initial written communication by Defendant in an attempt to receive sums due between May 30, 2023, and May 30, 2024." This Settlement provides significant and meaningful relief to all Plaintiff and the Class.

Here, the Settlement Class Members will each receive a check for $30.00 without the need

to file a claim. As explained below, and in the Motion for Preliminary Approval, a settlement award of $30.00 per Settlement Class member is reasonable considering other similar FDCPA class settlements and the risk of this particular case, including potential defenses raised by Defendant. *See, e.g., Berther v. TSYS Total Debt Mgmt.,* 2007 U.S. Dist. LEXIS 44500, at *9 (E.D. Wisc., June 19, 2007) (preliminarily approving a $10 payment per class member); *Chapman v. Bowman,* 2015 U.S. Dist. LEXIS 172338, at *21 (N.D. Ind., Dec. 29, 2015) (preliminarily approving a $15 payment to class members, resulting in a total payout of $3,030); *Shoemaker v. Bass,* 2020 U.S. Dist. LEXIS 269914, at *9-11 (W.D. Wisc., Jan. 3, 2020) (preliminarily approving a $10 payment per class member).

The FDCPA entitles a prevailing consumer to a maximum statutory damage of up to $1,000—"not [to] exceed[] $1,000." 15 U.S.C. § 1692k. Thus, the Settlement secured by Plaintiff and Class Counsel provides an excellent result and significant recovery for Settlement Class Members as compared to similar FDCPA cases as: (1) the value offered is a compromise of the maximum statutory damages each class member could receive in this matter, which would otherwise be highly contested and require vigorous litigation efforts, and (2) the value offered is compares favorably when compared to other similarly approved settlements.

### 2. The Contingent Nature of the Case

The court has recognized that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit." *Sutton v. Bernard,* 504 F.3d 688, 694 (7th Cir. 2007); *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 721 (7th Cir. 2001) (noting that contingent-fee arrangements reflect market compensation for taking on risk). Where a district court fails to provide for the risk of loss, "the possibility exists that counsel, whose only source of a fee is a

contingent one, will be under-compensated." *Id.* The risk inherent in contingency representation is a critical factor. The Seventh Circuit has emphasized that "the need for such an adjustment is particularly acute in class action suits." *Florin v. Nations Bank of Georgia*, 34 F.3d 560, 565 (7th Cir. 1994). Indeed, without the class mechanism, individuals would be unable to meaningfully enforce their statutory rights. *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) (noting a "realistic alternative" to a class action would be "zero individual suits"); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001) ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling ... claimants to pool their claims and resources" to "achieve a result they could not obtain alone.").

Here, Class Counsel undertook this matter entirely on a contingency fee basis and have incurred a total of $101,558.50 in lodestar and $1,087.34 in unreimbursed costs and expenses thus far in this litigation and may incur additional expenses through final approval. *See* Declaration of Abbas Kazerounian ("Kaz. Decl.") ¶¶ 60, 73-74; Declaration of Matthew McKenna ("McKenna Decl.") ¶¶ 28, 32-34. Class Counsel filed this action in May 2024 with the knowledge that Class Counsel would be required to devote numerous hours of work to the case with no guarantee of success. *Id.* at ¶ 61. Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all necessary expenses knowing that Class Counsel would only receive compensation if there was a recovery. *Id.* In pursuit of this litigation, Class Counsel have spent considerable outlays of time and money investigating the claims and defenses of the parties, conducting confirmatory discovery, negotiating and drafting the Settlement Agreement as well as the attachments thereto, drafting the motion for preliminary approval of the Settlement, and overseeing the administration of the Settlement to date, including ensuring that class notice went out timely and that the settlement website was timely established by the Settlement Administrator.

In addition to incurring litigation costs, Class Counsel expended significant time and resources despite knowing there was a risk they could never be compensated absent a favorable ruling for Plaintiff. *Id*. Therefore, this factor supports Class Counsel's fee request, given Class Counsel's unreimbursed expenses and many hours of work to date without the guarantee they would obtain a recovery,

### 3. Complexity of the Issues Involved

The U.S. Supreme Court has described the FDCPA as a "comprehensive and complex federal statute." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, 1615 (2010); *Brent v. Midland Funding, LLC*, 2011 U.S. Dist. LEXIS 98763, at *16 (N.D. Ohio Aug. 12, 2011) ("The Fair Debt Collection Practices Act is a set of complex laws with many components. The instant case would be very expensive to fully litigate and might take years to finally resolve through the course of trial and appeal, creating additional attorney's fees and reducing any potential payout to the class."). Indeed, the Seventh Circuit has recognized that class actions specifically involve unique risk and complexities. *Birchermeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-67 (7th Cir. 2018); *see also* Manual for Complex Litigation, Fourth, § 22. Correspondingly, FDCPA class action litigation is often complex, and some courts have declined to certify class actions for alleged violations of the FDCPA. *See, e.g., Ramirez v. Midland Funding, LLC*, 2020 U.S. Dist. LEXIS 161811, at * 14-15 (N.D. Ill., June 19, 2020) (denying class certification of a FDCPA class based on issues of predominance).

If this litigation were to continue without the Settlement, Defendant would continue to vigorously defend this action (Agr. § 3) as Defendant denies any "liability and wrongdoing" in this action (Agr. § 1) and asserts it has factual and legal defenses to Plaintiff's claims and class allegations raised by Plaintiff. Had contested litigation proceeded, the parties would likely submit

motions for summary judgment, which could then lead to appellate practice, and/or preparation for trial, resulting in further delays, uncertainties, and great expense. These complexities and challenges therefore favor the requested fee award.

### 4. Preclusions of Other Employment Due to Acceptance of the Case

Defendant Class Counsel's acceptance of this case and the litigation of this action to date has precluded counsel from spending time litigating other cases as the time spent by Class Counsel on this case was not, and could not be, spent at the same time on other matters. *See* Kaz. Decl., ¶ 60. It is difficult for Class Counsel to determine what other employment specifically may have been precluded due to acceptance of this case, but it is clear that the hours spent on this case would have otherwise been spent on other matters. Thus, this factor favors Class Counsel's requested fee award.

### 5. The Experience, Reputation, and Ability of Class Counsel

As discussed in Plaintiff's Motion for Preliminary Approval, Class Counsel who have successfully prosecuted this litigation to date have considerable experience litigating a variety of consumer rights issues on an individual and class basis, including class actions under the FDCPA. An extensive list of some of the cases in which Class Counsel have been appointed class counsel can be found in Class Counsel's accompanying declaration in support of Plaintiff's Motion. *See* Kaz. Decl., ¶¶ 27-44; McKenna Decl. ¶¶ 14-15. Considering the foregoing, Class Counsel's proven track record demonstrates the quality of the work they performed in this action and the skill they have generally exhibited in successfully prosecuting individual matters as well as complex class action cases, including cases involving the FDCPA. Thus, this factor supports approval of the requested award of attorneys' fees and costs in this Action.

## 6. The Requested Attorneys' Fees and Costs are Reasonable

Class Counsel have collectively expended a total of 182.6 hours during the course of this litigation of this Action through the date of filing Plaintiff's Motion, resulting in a total lodestar of $101,558.50 and total costs of $1,087.34. *See* Kaz. Decl., ¶¶ 68, 73, 75; McKenna Decl. ¶¶ 28, 32, 34. Class Counsel's lodestar consists of the total hours spent by all attorneys appearing in this case, less any time spent by other non-attorney staff. The accompanying declarations of Class Counsel set forth the hours of work and billing rates used to calculate their lodestar and are summarized below:

| Kazerouni Law Group, APC | | | | |
|---|---|---|---|---|
| **Name** | **Professional Level** | **Billing Rate** | **Total Hrs.** | **Lodestar** |
| Abbas Kazerounian | Partner | $1,075 | 19.8 | $21,285.00 |
| Mona Amini | Partner | $725 | 47.7 | $34,582.50 |
| Gustavo Ponce | Associate | $395 | 69.8 | $27,571.00 |
| | | **Total:** | **137.3** | **$83,438.50** |
| **Shield Law, LLC** | | | | |
| **Name** | **Professional Level** | **Billing Rate** | **Total Hrs.** | **Lodestar** |
| Matthew McKenna | Attorney | $400 | 45.3 | $18,120.00 |
| | | **Total:** | **45.3** | **$18,120.00** |
| | | | | |
| | **Class Counsel's Total Lodestar:** | | **182.6** | **$101,558.50** |

The work performed by Class Counsel to date includes (1) developing case strategy, (2) investigating Plaintiff's claims, researching, and filing the Complaint, (3) drafting and negotiating the Settlement Agreement, Notice documents, and other exhibits, (4) obtaining and comparing bids from settlement administrators (5) drafting the preliminary approval motion papers and securing preliminary approval of the Settlement, (6) researching and preparing Plaintiff's response to an objection to the Settlement, and (7) drafting the instant Motion for Attorney's Fees, Costs, and the Incentive Award for the Class Representative. *See* Kaz. Decl. ¶ 70; McKenna Decl. ¶ 29.

Additional work will be required following this motion through final approval. Class Counsel must still: (1) prepare for and attend the final approval hearing, including finalizing the motion and responding to any objections, (2) respond to inquiries from Settlement Class Members, (3) oversee the Settlement through final approval and distribution of settlement benefits, (4) oversee the settlement administration process, and, if needed, and (5) address any objection or appeals. *See* Kaz Decl. ¶ 71; McKenna Decl. ¶ 31. Class Counsel intend to provide the Court with additional information concerning the hours expended prior to the Final Approval Hearing. *Id.*

The amount of time expended by Class Counsel is reasonable for this type of litigation. Courts in the Seventh Circuit recognize that the participation of multiple attorneys does not automatically render a fee unreasonable, provided that the hours are detailed, contemporaneous, and duplicative or unproductive time is excluded. *Ustrak v. Fairman,* 851 F.2 983, 989 (7th Cir. 1988); *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 768 (7th Cir. 1982) (approving lodestar-based fee award for eleven attorneys). The lodestar method allows courts to account for the contributions of multiple attorneys while scrutinizing overlapping or unnecessary time, ensuring that fees reflect only worth that is reasonably expended. *Cook v. Niedert,* 142 F.3d 1004, 1010 (7th Cir. 1998) (approving compensation for multiple attorneys' hours where reasonable and documented).

Furthermore, Courts recognize "in most instances when associates are employed to work under the supervision of a partner, there is some duplication of time in that the associate must report and the partner must review." *See, e.g., American Petroleum Institute v. Environmental Protection Agency*, 72 F.3d 907, 916 (D.C. Cir. 1996); *Massachusetts Dept. of Public Health v. School Committee of Tewksbury*, 841 F. Supp. 449, 459 (D. Mass. 1993) ("In general, conferences between an associate and a supervising partner are necessary to effective and diligent representation, and in the end reduce the amount of unnecessary time spent on a case").

In addition to the above time spent in litigating this action to date, Class Counsel have thus far also incurred the following unreimbursed costs and expenses in this litigation:

| Kazerouni Law Group, APC | |
|---|---|
| **Category/Description** | **Costs** |
| Process Server Fees | $ 95.00 |
| Court Filing Fees | $531.00 |
| Notary Service Fee | $ 25.00 |
| Postage/Mailing Costs | $ 31.34 |
| **Shield Law, LLC** | |
| **Category/Description** | **Costs** |
| Filing Fee for Complaint | $ 405.00 |
| | |
| **TOTAL:** | **$1,087.34** |

Accordingly, at this juncture prior to the briefing of Plaintiff's Motion for Final Approval and the Final Approval Hearing, Class Counsel's the aggregate attorney's fees and costs incurred in this matter totals $111,745.84. *See* Kaz Decl., ¶¶ 68, 73, 75; McKenna Decl. ¶¶ 28, 32, 34.

### 7. <u>The Requested Hourly Rates Are Reasonable and Appropriate</u>

The U.S. Supreme Court has stated "[t]he statute and legislative history established that 'reasonable fees' under Section 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, *supra*, 465 U.S. at 895, 104 S. Ct. at 1547 (footnote omitted). Furthermore, attorney "affidavits in conjunction with other evidence of the rates charged by comparable lawyers [are] sufficient" to establish the market rate for attorney's services. *Harper v. City of Chicago Heights,* 223 F.3d 593, 604 (7th Cir. 2000); *Sprinkle v. Colvin,* 777 F.3d 421, 428-29 (2015) (noting that a single sworn statement from an attorney setting forth the prevailing rate may suffice in some cases, depending on the court's discretion).

To encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by

taking other types of cases:

> Our recent cases have stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients. For a busy attorney, this is the standard hourly rate. If he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else. That other person's willingness to pay establishes the market's valuation of the attorney's services.

*Gusman v. Unisys Corp.,* 986 F. 2d 1146, 1150 (7th Cir. 1993).

Indeed, "[p]aying counsel in FDCPA cases at rates lower than those they could obtain in the marketplace is inconsistent with the Congressional desire to enforce the FDCPA through private actions and therefore misapplies the law." *Tolentino v. Friedman*, 46 F. 3d 645, 652-653 (7th Cir. 1995).

Here, the hourly rates requested herein are commensurate with the experience and training of Class Counsel, whose experience and expertise discussed in detail in the Declaration of Class Counsel filed concurrently herewith. Class Counsel's hourly rates have steadily risen over time, and have been approved by other federal and state courts. *See, e.g.*, *In re loanDepot Data Breach Litigation*, No. 8:24-cv-00136-DOC-JDE (C.D. Cal. Aug. 25, 2025) (finally approved class action settlement, approving hourly rates of $1,075 for Abbas Kazerounian and $725 for Mona Amini); *Hillbom v. R1 RCM, et al.*, No. 2:24-cv-00664-JAD-EJY (D. Nev. Nov. 14, 2025) (finally approved class action settlement, approving hourly rates of $1,075 for Abbas Kazerounian, $725 for Mona Amini, and $395 for Gustavo Ponce); *Bank of America v. Sean Seagren*, No. 24-CV-2028 (Waukesha Cir. Ct. 2025) (approving Matthew McKenna's hourly rate of $400). Thus, the requested hourly rates for Class Counsel, which have been previously approved, are reasonable and appropriate in this Action.

//

//

8. **The Award of Attorneys' Fees is Not Limited by the Amount of Damages Recovered and Need Not Be Proportionate to the Recoveries of Plaintiff or the Settlement Class**

As long as the plaintiff is successful, *i.e.,* recovers more than nominal damages, the plaintiff should be awarded attorney's fees pursuant to a lodestar calculation. *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997). Despite the fact that an award of attorneys' fees is not limited by the amount of damages recovered, Plaintiff's favorable result in this action justifies the attorneys' fees and costs sought by Plaintiff's Motion.

"In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under section 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves." *City of Riverside v. Rivera*, 477 U.S. 561, 581 (1986) (awards of reasonable attorneys' fees under federal statutes that include fee-shifting provisions, such as the FDCPA, "are not conditioned upon and need not be proportionate to an award of money damages." *Id*. at 576); *Lewis v. Kendrick*, 944 F.2d 949, 957 (1st Cir. 1991) ("We believe we made it clear that we were not departing from the recognized principle that the fee is not limited by the size of the recovery, but may, in appropriate instances, greatly exceed it."); *McClain v. Hanna*, No.: 19-10700, 2019 WL 5680577, at *5 (E.D. Mich. Aug. 23, 2019) ("A rule that limits attorney's fees in consumer rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting § 1692k(a)(3)."). "In fact, courts routinely award reasonable attorneys' fees to a prevailing party in FDCPA cases that greatly exceed damage awards." *Ramsey v. Int'l Computer Sys., Inc*., No. 1:16-CV-745, 2017 WL 25502, at *2 (S.D. Ohio Jan. 3, 2017); *see also Randle v. H & P Capital, Inc*., 513 F. App'x 282, 283 (4th Cir. 2013) (affirming award of $76,876.59 in attorneys' fees and expenses where plaintiff recovered $6,000); *Shoemaker v. Bass & Moglowsky, S.C.,* No. 3:19-cv-00316-wmc (W.D. Wis.) (FDCPA class action settlement approving award of

$26,340 in attorney's fees and costs where class members received $10.90).

The benefits to the public as a whole resulting from lawsuits that encourage compliance with statutory provisions are more important than relatively small damage awards. Indeed, when the provision for counsel fees is included in a regulatory act, it is a recognition that enforcement of the statute would be unlikely if an individual had to pay his or her own attorney's fees.  The Court quoted Senator Tunney's remarks the Congressional Record:

> If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate those under indicated; and the entire nation, not just the individual citizen, suffers.

*See City of Riverside v. Rivera*, *supra*, 477 U.S. at 575 (citation omitted). The Third Circuit amplified this thought stating:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*See Student Public Interest Research Group v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449 (3d Cir. 1988).

As stated above, "Congress has relied on such plaintiffs to act as private attorneys general." *Id*., at 1450 n.13.  *See also Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991).  The amount of damages awarded need not bear any relation to the amount of attorney's fees granted. "[A]ttorney's fees awarded by district courts have 'frequently outrun the economic benefits ultimately obtained by successful litigants.'" *Evans v. Jeff D*., 475 U.S. 717, 735; 106 S. Cot. 1531, 1541; 89 L. Ed. 2d. 747 (1986) (citation omitted).  Upon finding a statutory violation and damages, the attorney's fees award should be made in the lodestar amount. *See generally, Zagorski v. Midwest Billing Servs.,* 128 F.3d1164, 1167 (7th Cir. 1997).

Although the amount of reasonable attorneys' fees awarded pursuant to the FDCPA is left to the sound discretion of the judge, the Court may find the following fee and cost awards helpful in making its determination. The Eastern District of Wisconsin awarded $80,000 in attorney's fees in a FDCPA case in *Spuhler v. State Collection Servs.,* 2019 U.S. Dist. LEXIS 85318, *22 (E. D. Wisc., May 21, 2019). Also, in *Armstrong v. The Rose Law Firm, P.A.*, 2002 WL 31050583 (D. Minn., Sept. 5, 2002), the District Court approved the award of $43,180 in attorney's fees where the plaintiff recovered $1,000 in statutory damages. The Southern District of Florida affirmed the bankruptcy court's award of attorney's fees of $29,037.50 where the plaintiff recovered FDCPA statutory damages of $1,000 in *In re Martinez*, 266 B.R. 523, 544 (Bankr. S.D. Fla. 2001), aff'd 271 B.R. 696 (S.D. Fla. 2001).  In *Jones v. Robert Vest*, 2000 U.S. Dist. LEXIS 19026 (E.D. Va. Dec. 27, 2000), the court awarded $17,766.49 in costs, litigation expenses and attorney's fees in a FDCPA case with $1,000 in statutory damages. In *Perez v. Perkiss*, 842 F. Supp. 883 (D. Del. 1990), the District Court awarded $10,110 in attorney's fees where the plaintiff's recovery was $1,200. The Seventh Circuit reversed a district court's denial of attorney's fees even though the plaintiffs recovered $100 ($50 each) as FDCPA statutory damages and remanded for determination of an award of attorneys' fees. *See Zagorski v. Midwest Billing Services*, 128 F.3d 1164, 1167 (7th Cir. 1997)

### 9.  <u>The Settlement Represents an Outstanding Result for the Class</u>

The parties' settlement in this Action represents an outstanding result for the Settlement Class Members. Typically, individual consumers are unaware of their rights under the FDCPA, and the size of individual claims is usually so small there is little incentive to sue individually, therefore class actions to enforce such consumer protection statutes are superior to individual claims. According to 15 U.S.C. §1692k: "(a) [e]xcept as otherwise provided by this section, any

debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of …(B) in the case of a class action…(ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector . . ." 15 U.S.C. §1692k.  Here, the Settlement provides that each of the members of the Settlement Class who does not request exclusion from the Settlement will be awarded $30 without the need to make a claim, resulting in a total Class Settlement award of $9,090.00 for the 303 Settlement Class Members.

Further, by settling this matter, the parties avoid the expense of trial and uncertainty of outcome. If this matter proceeded to trial the net value of the recovery could be further decreased due to the costs of compelling further discovery, retaining expert witnesses, preparing for trial and possibly, engaging in post-trial matters, including the lodging of an appeal.  Therefore, the parties' Settlement is not only fair, adequate and reasonable for all involved, but also an outstanding result for the Class.

**B.  CLASS COUNSEL ARE ENTITLED TO AN AWARD OF COSTS AND EXPENSES**

Plaintiff requests an award of costs and litigation expenses and an award of attorneys' fees, pursuant to 15 U.S.C. 1692k(a)(3) and the parties' Settlement Agreement. The Seventh Circuit has long held that fee-shifting statues permit recovery of reasonable out-of-pocket litigation expenses. *Bright v. Land O'Lakes, Inc.,* 844 F.2d 436, 444 (7th Cir. 1988). As explained in *Henry v. Webermeier,* fee-shifting statutes are intended to shift the full cost of legal representation, and that cost "includes the out-of-pocket expenses for which lawyers normally bill their clients separately, as well as fees for lawyer effort." 738 F.2d 188, 192 (7th Cir. 1984) Recoverable costs include travel, photocopies, lodging, postage, telephone calls, and computerized research. *Libertad v.*

*Sanchez*, 134 F. Supp. 2d 218, 236 (D.P.R. 2001); *United Nuclear Corp. v. Cannon*, 564 F. Supp. 581, 591-92 (D. R.I. 1983). Costs may be recovered as provided for by statutes as well as 28 U.S.C. 1920. *See Lathem v. Department of Children & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999).

Here, Class Counsel seeks reimbursement of costs totaling $1,087.34 as of the filing of Plaintiff's Motion. As indicated above, these costs and litigation expense included court filing fees, process server fees, notary service costs, and postage/mailing costs. Kaz. Dec. ¶¶ 73-75; McKenna Decl. ¶¶ 32, 34. These costs were reasonably necessary for the prosecution and ultimate successful resolution of this litigation and were incurred by Class Counsel for the benefit of Settlement Class Members, and there was no guarantee that they would be reimbursed. *Id.* Plaintiff's litigation expenses and costs are commensurate with compensable expenses and are recoverable. Accordingly, Class Counsel respectfully submit that these litigation costs are reasonable, and the Court should approve their reimbursement.

### C. PLAINTIFF'S REQUESTED INCENTIVE AWARD IS REASONABLE

"Incentive awards are fairly typical in class actions cases." 4 William B. Rubenstein et al., Newberg on Class Actions § 11:38 (4th ed.2008). The requested incentive award to Plaintiff of $2,500 allocated by the Settlement Agreement is reasonable and should be approved because class representatives in class action litigation are eligible for reasonable participation payments to compensate them for the risks assumed and efforts made on behalf of the Class. *See, Cook v. Niedert,* 142 F.2d 1004, 1016 (7th Cir. 1998) ("a named plaintiff is an essential ingredient to any class action); *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.,* 897 F.3d 825, 834-35 (7th Cir. 2018) (finding a $1,000 award was reasonable "in light of the degree of the [named plaintiff's] participation in the case and the amount of time and effort expanded").

In determining whether an incentive award is warranted, district courts must evaluate "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursing the litigation." *In re Advocate Aurora Health Pixel Litig.,* 740 F.Supp.3d 736, 763 (E.D. Wis. 2024); *Scott v. Dart,* 99 F.4th 1076, 1085 (7th Cir. 2024) (incentive awards may be received to compensate named plaintiff's "for shouldering the time-consuming burden of litigation and assuming risks of financial, and potentially reputation, harm). Modest service (or incentive) awards, such as the one requested here, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.

Here, the Settlement Agreement calls for the named Plaintiff Mahlon Oie, who has served as the Class Representative in this action, to receive a $2,500 Incentive Award. The incentive award is well deserved and justified by the fact that Plaintiff pursued this action benefiting a large class of consumers and furthered the public policy goals of the consumer protection statutes at issue herein and was actively engaged during the entire litigation process. Therefore, Plaintiff's time and effort made resolution of this action possible for the members of the Class. By bringing this action, Plaintiff also furthered the well-stablished public policy goals of consumer class actions as recognized by Wisconsin Courts:

> The case law is clear that public policy favors class actions especially where the amount in controversy is so small that the wronged party is unlikely ever to obtain judicial review of the alleged violation without a class action. Class actions "simplif[y]" lawsuits and avoid "a multiplicity of litigation."

*Gudez v. Franklin Collection Serv.,* 2024 Wisc. App. LEXIS 1021, *6 (Dec. 3, 2024) (quoting *Harwood v. Wheaton Franciscan Servs., Inc.,* 2019 WI App 53, 54-55 (2019).

Plaintiff indeed subjected himself to public attention by lending his name to this action and has actively engaged in this action. Plaintiff's efforts include, for example: time spent in pre-suit

investigation, reviewing documents including the complaint and the settlement agreement, reviewing motions, submitting his declaration in support of the motion for preliminary approval, and willingness to proceed with litigation of this case through to a trial if necessary. *See* ECF No. 28-2, Declaration of Mahlon Oie ¶ 8.

The requested Incentive Award for Plaintiff for his participation as the Class Representative is reasonable and notably lower than incentive awards approved in similar cases. *See, e.g., Pierre v. Midland Credit Mgmt.,* No. 16 C 2895, 2019 U.S. Dist. LEXIS 2357296 (N.D. Ill. Dec. 11, 2019) (granting an incentive award of $4,000 in an FDCPA class action settlement); *In re Advocate Aurora Health Pixel Litig.,* 740 F. Supp. 3d 736, 763 (E.D. Wis. July 10, 2025 (approving incentive awards of $3,500 for each class representative based on agreement between the parties and plaintiffs' role in the case).

Accordingly, Class Counsel respectfully submit that Plaintiff's requested Incentive Award should be approved by the Court.

## V. CONCLUSION

Based on the foregoing, an award of reasonable attorneys' fees and costs is mandated in this action as Plaintiff is the prevailing party under the FDCPA, and it is an agreed-upon term of the parties' Settlement Agreement, which has been preliminarily approved by this Honorable Court. Further, the time billed by Class Counsel reflects the time required to be spent by Class Counsel to successfully prosecute this FDCPA action and the time billed by Class Counsel exceeds Plaintiff's requested fee award, therefore, additional time reduction is unwarranted, and the hourly rates sought by Class Counsel are a reasonable market rate and have been approved by other District Courts. Accordingly, Class Counsel respectfully submits that the Court should grant Plaintiff's Motion for an award of $90,000 in reasonable attorney's fees and costs. In addition,

Class Counsel respectfully submits that Plaintiff's requested Incentive Award is fair and reasonable in light of Plaintiff's involvement in the case and should be approved by the Court.

Dated: December 5, 2025                    Respectfully submitted,

                                           By: /s/ Mona Amini
                                               Abbas Kazerounian, Esq.
                                               Mona Amini, Esq.
                                               Gustavo Ponce, Esq.
                                               KAZEROUNI LAW GROUP, APC
                                               245 Fischer Ave., Unit D1
                                               Costa Mesa, CA 92626
                                               Telephone: (800) 400-6808
                                               Facsimile: (800) 520-5523

                                               Matthew McKenna, Esq. (Bar No. 1136438)
                                               SHIELD LAW, LLC
                                               237 South St. Unit 110
                                               Waukesha, WI 53186
                                               Telephone: (262) 420-5953
                                               Facsimile: (508) 588-7303

                                               *Attorneys for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 4(b), I hereby certify that I am an employee of Kazerouni Law Group, APC, and that on this 5th day of December 2025, the foregoing **PLAINTIFF'S UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD** to be served through the Court's CM/ECF system to those persons designated by the parties that have appeared in the matter.

Dated: December 5, 2025                    Respectfully submitted,


By: _/s/ Mona Amini_____
    Abbas Kazerounian, Esq.
    Mona Amini, Esq.
    Gustavo Ponce, Esq.
    KAZEROUNI LAW GROUP, APC
    245 Fischer Ave., Unit D1
    Costa Mesa, CA 92626
    Telephone: (800) 400-6808
    Facsimile: (800) 520-5523

    Matthew McKenna, Esq. (Bar No. 1136438)
    SHIELD LAW, LLC
    237 South St. Unit 110
    Waukesha, WI 53186
    Telephone: (262) 420-5953
    Facsimile: (508) 588-7303

    *Attorneys for Plaintiff and the Settlement Class*